BRYAN SCHWARTZ LAW
BRYAN SCHWARTZ (SBN 209903)
RACHEL TERP (SBN 290666)
180 Grand Ave., Suite 1380
Oakland, California 94612
Tel: (510) 444-9300
Fax: (510) 444-9301
Email: bryan@bryanschwartzlaw.com
rachel@bryanschwartzlaw.com

*Attorneys for Plaintiffs and the Proposed
FLSA Collective, California Class, and
on behalf of the general public*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORINA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Connie Rueda, Jessica Cotton, and Shelia Spencer, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>             Plaintiffs,<br><br>   vs.<br><br><br>Idemia Identity & Security USA, LLC, MorphoTrust USA, LLC, and Does 1-50,<br><br>            Defendant. | **CASE NO.: 3:18-cv-03794-VC**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Originally filed: May 22, 2018<br>Removal date: June 25, 2018<br>Trial date: None set<br><br>Hearing Date: April 18, 2019<br>Time: 10:00 a.m.<br>Courtroom: 4<br>Judge: Hon. Vince Chhabria |

1

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 18, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., 17th Floor, San Francisco, California 94102, Plaintiffs Connie Rueda, Jessica Cotton, and Shelia Spencer ("Plaintiffs") will and hereby do move for settlement approval. By this motion, and at the hearing, Plaintiffs' counsel will request that the Court: (1) preliminarily approve the Settlement; (2) certify the proposed California Class and Non-California Collective for settlement purposes only; (3) name Bryan Schwartz Law as Class Counsel, and Plaintiffs as Class Representatives; (4) name Rust Consulting as Claims Administrator; (5) approve the Notices to be sent to the California Class and Non-California classes and the back of-the-check release language; and (6) schedule a final approval hearing date.

This Motion is based upon: this Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class; the accompanying Memorandum of Points and Authorities; the supporting Declaration of Attorney Rachel M. Terp ("Terp Decl.") and accompanying exhibits including the "Stipulation of Class Action, Collective Action, and Representative Action Settlement and Release" ("Settlement Agreement") attached as Exhibit 1 to the declaration; the supporting Declaration of Attorney Bryan J. Schwartz ("Schwartz Decl."); the supporting Declaration of Attorney Michael D. Thomas ("Thomas Decl.") as well as arguments of counsel, papers, records, and pleadings in this matter.

Dated: February 22, 2019

BRYAN SCHWARTZ LAW

By: _/s/ Rachel M. Terp_
Bryan J. Schwartz, Esq.
Rachel M. Terp, Esq.

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   RELEVANT PROCEDURAL BACKGROUND ...................................................... 2

III.  FACTUAL BACKGROUND .................................................................................. 3

    A.   Off-the-Clock and Overtime ........................................................................ 4

    B.   Regular Rate of Pay. .................................................................................... 5

    C.   Meal and Rest Breaks .................................................................................. 6

    D.   Cell Phone Reimbursement ........................................................................... 6

    E.   Derivative Claims ........................................................................................ 6

IV.   THE PROPOSED SETTLEMENT TERMS AND FACTORS IN THE PARTIES'
    DECISION TO SETTLE. ...................................................................................... 7

    A.   The Class Definitions ................................................................................... 7

    B.   Settlement Terms ......................................................................................... 7

V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ......... 9

    A.   The Settlement Satisfies the Rule 23 Requirements for Purposes of Settlement ............ 9

    B.   The Settlement Meets the Requirements for Preliminary Approval ................................ 10

        1.   The Strength of Plaintiffs' Case and Risks of Continued Litigation. .................... 11

            a.   Certification of Meal and Rest Break Claims is Uncertain ........................... 11

            b.   Certification of Off-the-Clock Claims is Uncertain, and Such Claims are
               Challenging to Prove .................................................................................. 12

            c.   Commission Pay Violations Appear Limited ................................................ 12

            d.   De Minimis Doctrine Could Have Drastically Reduced Recovery for the
               Collective .................................................................................................. 12

            e.   Cell Phone Use May be Deemed Unnecessary .............................................. 13

i

f.     Defendant May Have Succeeded in its Good-Faith Defenses ...................... 13

g.     Plaintiffs May Have Recovered Less in Interest and Penalties ................... 14

h.     The Risks and Costs of Proceeding, and of Maintaining Class Action Status through Trial, Favor Approval. ........................................................................ 14

2.     The Extent of Discovery Completed and the State of Proceedings ........................ 15

3.     The Experience and Views of Counsel .................................................................. 16

4.     The Presence of a Government Participant ............................................................ 16

5.     The Reaction of the Class Members to the Proposed Settlement ........................... 16

6.     The Amount Offered In Settlement ....................................................................... 17

C.     The Incentive Awards Are Appropriate ......................................................................... 18

D.     Attorneys' Fees and Costs are Appropriate ................................................................... 20

E.     The Proposed Notice is Sufficient ................................................................................. 22

F.     The *Cy Pres* Awardee is Appropriate ........................................................................... 23

G.     The PAGA Allocation is Reasonable ............................................................................ 23

H.     The Settlement is Also Reasonable Under the FLSA's Review Standard ..................... 25

VI.     **CONCLUSION** ...................................................................................................................... **25**

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**<u>Federal Cases</u>**

*Alexander v. FedEx Ground Package System, Inc.*,
    2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ...................................................................24

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) .......................................................................................16

*Alvarez v. IBP, Inc.*,
    339 F.3d 894 (9th Cir. 2003) ........................................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................................12

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) ...................................................................20

*Biggs v. Wilson*,
    1 F.3d 1537 (9th Cir. 1993) ..........................................................................................21

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ...............................................................................16

*Brooklyn Savings Bank v. O'Neil*,
    324 U.S. 697 (1945)......................................................................................................14

*Buccellato v. AT&T Operations, Inc.*,
    2011 WL 33480455 (N.D. Cal. June 30, 2011) ............................................................22

*Buckingham v. Bank of America, N.A.*,
    Case No. 3:15-cv-6344-RGS (N.D. Cal.) ......................................................................20

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018) .................................................................................12, 15

*Castro v. ABM Industries, Inc.*,
    325 F.R.D. 332 (N.D. Cal. 2018)..................................................................................13

*Castro v. ABM Industries, Inc.*,
    2018 WL 2197527 (N.D. Cal. May 14, 2018) ...............................................................13

*Churchill Village, LLC v. General Electric*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................................22

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .......................................................................................15

iii

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ........................................................ 10, 11, 17

*Craft v. County of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................. 22

*Cruz v. Sky Chefs, Inc.*,
    2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ...................................................... 24

*Custom Led, LLC v. eBay, Inc.*,
    2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) ...................................................... 10

*Cuzick v. Zodiac U.S. Seat Shells, LLC*,
    2017 WL 4536255 (N.D. Cal. Oct. 11, 2017) ...................................................... 18

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2013) ........................................................................ 23

*Eddings v. DS Services of America, Inc.*,
    2016 WL 3390477 (N.D. Cal. May 20, 2016) ...................................................... 11

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................................ 10

*Fischel v. Equitable Life Assurance Society of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ........................................................................ 21

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
    253 F. Supp. 3d 1074 (C.D. Cal. 2017) ............................................................. 23

*Ford v. Alfaro*,
    785 F.2d 835 (9th Cir. 1986) ........................................................................ 14

*Galeener v. Source Refrigeration & HVAC, Inc.*,
    2015 WL 12976106 (N.D. Cal. Aug. 20, 2015) ..................................................... 20

*Galeener v. Source Refrigeration & HVAC, Inc.*,
    2015 WL 12977077 (N.D. Cal., Aug. 21, 2015) .................................................... 20

*Guilbaud v. Sprint Nextel Corp.*,
    2016 WL 7826649 (N.D. Cal., Apr. 15, 2016) ..................................................... 20

*Gutierrez v. Wells Fargo Bank, N.A.*,
    2015 WL 2438274 (N.D. Cal. May 21, 2015) ...................................................... 22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................. 10, 11, 20

*Harris v. Vector Marketing Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................................... 17

iv

*Hunt v. VEP Healthcare, Inc.*,
    2017 WL 3608297 (N.D. Cal. Aug. 22, 2017) ................................................. 11

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011) ................................................................................. 18

*In re Heritage Bond Litigation*,
    546 F.3d 667 (9th Cir. 2009) ................................................................................. 10

*In re Omnivision Technologies, Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 17, 21

*In re Syncor ERISA Litigation*,
    516 F.3d 1095 (9th Cir. 2008) ............................................................................... 15

*In re Wells Fargo Loan Processor Overtime Pay Litigation*,
    2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ........................................................ 12

*Ino v. Gap, Inc.*,
    2014 WL 12776370 (N.D. Cal. July 28, 2014) ...................................................... 13

*Integrity Staffing Solutions, Inc. v. Busk*,
    135 S.Ct. 513 (2014) ............................................................................................. 13

*Johnson v. Quantum Learning Network, Inc.*,
    2017 WL 747462 (N.D. Cal. Feb. 27, 2017) ......................................................... 20

*Jimenez v. Allstate Insurance Co.*,
    765 F.3d 1161 (9th Cir. 2014) ............................................................................... 12

*Kakani v. Oracle Corp.*,
    2007 WL 1793774 (N.D. Cal. June 19, 2007) ....................................................... 16

*Laguna v. Coverall North America, Inc.*,
    753 F.3d 918 (9th Cir. 2014) ................................................................................. 18

*Lee v. JPMorgan Chase & Co.*,
    2015 WL 12711659 (N.D. Cal. Apr. 28, 2015) ....................................................... 9

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir.1998) ............................................................................... 15

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ............................................................................ 25

*Ma v. Covidian Holding, Inc.*,
    2014 WL 360196 (C.D. Cal. Jan. 31, 2014) .......................................................... 18

*Martin v. Applied Data System*,
    972 F.2d 1340 (9th Cir. 1992) ............................................................................... 14

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

*McCowen v. Trimac Transportation Services, Inc.*,
   311 F.R.D. 579 (N.D. Cal. Dec. 23, 2015) ...................................................... 6

*O'Connor v. Uber, Inc.*,
   201 F. Supp. 3d 1110 (N.D. Cal. Aug. 18, 2016) ......................................... 24

*O'Sullivan v. AMN Services, Inc.*,
   Case No. 12-cv-2125 (N.D. Cal. 2014) ......................................................... 18

*Officers for Justice v. Civil Service Commission of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ........................................................... 10, 15, 17

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*,
   303 F.R.D. 337 (E.D. Cal. 2014) .................................................................. 18

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*,
   Case No. 13-cv-00672 (E.D. Cal. June 9, 2015) ........................................... 18

*Paul, Johnson, Aliston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ....................................................................... 20

*Richardson v. Interstate Hotels & Resorts, Inc.*,
   2018 WL 1258192 (N.D. Cal., Mar. 12, 2018) ....................................... 11, 12

*Richie v. Blue Shield of California*,
   2014 WL 6982943 (N.D. Cal. 2014) ............................................................ 13

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................. 15, 16

*Ross v. U.S. Bank National Association*,
   2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ............................................ 19

*Rutti v. Lojack Corp., Inc.*,
   596 F.3d 1046 (9th Cir 2010) ...................................................................... 13

*Rutti v. Lojack Corp.*,
   2012 WL 3151077 (C.D. Cal. July 31, 2012) .............................................. 19

*Sarinana v. DS Waters of America, Inc.*,
   2014 WL 12770237 (June 9, 2014) ............................................................... 9

*Steiner v. American Broadcasting Co., Inc.*,
   248 Fed. Appx. 780 (9th Cir. 2007) ............................................................ 21

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................. 9, 19

*Stanger v. China Electric Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ...................................................................... 21

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

*Tijero v. Aaron Brothers, Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013) .................................................................. 18

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F.Supp.2d 1114 (E.D. Cal. 2009) ......................................................... 16

*Vazquez v. USM Inc.*,
    2016 WL 612906 (N.D. Cal. Feb. 16, 2016) .............................................. 24

*Viceral v. Mistras Group, Inc.*,
    2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ............................................ 23

*Viceral v. Mistras Group, Inc.*,
    2017 WL 661352 (N.D. Cal. Feb. 17, 2017) .............................................. 24

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................... 18, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ......................................................................... 22

*Willner v. Manpower Inc.*,
    35 F. Supp. 3d 1116 (N.D. Cal. 2014) ....................................................... 14

*Willner v. Manpower Inc.*,
    2015 WL 3863625 (N.D. Cal. June 22, 2015) ........................................... 15

*Wilson v. TE Connectivity Networks, Inc.*,
    2017 WL 1758048 (N.D. Cal. Feb. 9, 2017) .............................................. 11

*Yuzary v. HSBC Bank USA, N.A.*,
    2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .............................................. 22


**State Cases**

*Arias v. Superior Court*,
    46 Cal.4th 969 (2009) ................................................................................ 23

*Armenta v. Osmose, Inc.*,
    135 Cal. App. 4th 314 (2005) .................................................................... 14

*Bell v. Farmers Insurance Exchange*,
    135 Cal. App. 4th 1138 (2006) .................................................................. 14

*Nordstrom Commission Cases*,
    186 Cal. App. 4th 576 (2010) .................................................................... 24

*Pineda v. Bank of America, N.A.*,
    50 Cal. App. 4th 1389 (2010) .................................................................... 14

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

*Serrano v. Aerotek, Inc.*,
    21 Cal. App. 5th 772 (2018) ................................................................................ 11

*Troester v. Starbucks Corp.*,
    5 Cal. 5th 829 (2018) ......................................................................................... 13


**Federal Statutes, Rules and Regulations**

29 C.F.R. § 790.8 .................................................................................................... 13

29 U.S.C. § 255 ....................................................................................................... 14

29 U.S.C. § 260 ....................................................................................................... 14

Federal Rule of Civil Procedure 23 ............................................................. 10, 15, 22

Federal Rule of Civil Procedure 30 ................................................................. 3, 4, 6


**State Statutes and Regulations**

California Business & Professions Code § 17200 .......................................................... 1

California Civil Code § 3289 ................................................................................... 14

California Labor Code § 203 ............................................................................... 14, 15

California Labor Code § 218.6 ................................................................................ 14

California Labor Code § 226 ................................................................................... 14

California Labor Code § 2699 ............................................................................. 23, 24

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

Plaintiffs seek class settlement approval for a deal that provides substantial compensation and

4

injunctive relief to class members. Plaintiffs filed a wage-and-hour class and collective action on behalf

5

of Enrollment Agent Is, Enrollment Agent IIs, Mobile Enrollment Agents, and Lead Enrollment Agents

6

(hereinafter "Enrollment Agents") against Defendants Idemia Identity & Security USA, LLC and

7

MorphoTrust USA, LLC (hereinafter "Defendants"). Plaintiffs' Third Amended Complaint alleges

8

federal Fair Labor Standards Act ("FLSA") overtime violations, and under California state law, alleges

9

failure to pay for all hours worked including overtime, failure to authorize and permit meal and rest

10

periods, failure to provide accurate itemized wage statements, failure to reimburse business expenses,

11

and failure to pay all wages due upon separation. (ECF 55, Third Amended Complaint) Plaintiffs

12

further allege that Defendants violated Business & Professions Code section 17200, and the Private

13

Attorneys General Act of 2004 ("PAGA"). (*Id.*) Defendants deny Plaintiffs' claims. (Exhibit 1, ¶ 3.23)

14

The Settlement Agreement provides a non-reversionary settlement of these claims in the amount

15

of $1,700,000, plus the employer's share of payroll taxes, plus an escalation clause if the class and

16

workweeks covered are substantially larger than indicated at the time of settlement, plus injunctive

17

relief. (*Id.* ¶¶ 1.25, 3.16)

18

If this case had failed to settle, Plaintiffs would have had to take and defend many more

19

depositions, win and maintain class and collective action certification through trial, survive Defendants'

20

potential motions for summary judgment and decertification, and prevail at trial and on any appeals –

21

risky and expensive propositions that would have, at a minimum, greatly delayed and potentially

22

diluted recovery for the class and collective action members. (Terp Decl. ¶¶ 12, 17)

23

As more fully discussed below, the proposed Settlement was reached after substantial

24

investigation and discovery. The Settlement is the product of arms'-length negotiations during a day-

25

long mediation with top wage-and-hour mediator, Mark Rudy, Esq., as well as months of additional

26

negotiations primarily focused on defining meaningful injunctive relief terms. (*Id.* ¶¶ 2-5) Absent this

27

settlement, the low-wage workers in the class would have had to prove they worked off-the-clock. With

28

this deal, 618 individuals would receive an average of $2,751 gross, years sooner than if the matter

1

were litigated to conclusion. (*Id.* ¶¶ 12, 18) There is no requirement for California Class Members to file claims, and FLSA Collective Members opt into this Settlement by cashing their settlement checks. (Exhibit 1, ¶¶ 1.23, 1.41, 1.42, 3.40; *id.* Exhibit C) Class Members will only release claims that are or could have been asserted based on the facts alleged in the Third Amended Complaint. (Exhibit 1, ¶ 1.33). Defendants have stipulated to take significant remedial measures to ensure future compliance with California and federal wage and hour laws. (*Id.* ¶ 3.16) In sum, the Settlement is fair, reasonable, and adequate, and represents a significant recovery based on the claims and defenses in the case.

Finally, the proposed notice plan suffices. The Notices contain straightforward language, which fairly convey the terms of the proposed Settlement and the California Class Members' rights to opt-out as well as to object and be heard, appraising Non-California Collective Members of their right to withdraw their consent-to-join forms (if filed) or to elect not to join the Settlement by declining to cash their settlement checks. (*See* Exhibits A & B to Exhibit 1; *id.* ¶ 1.27) If the Court approves the Settlement, the Notices will be distributed by First-Class U.S. mail to the last known address of each California Class and FLSA Collective Member. (*Id.* ¶ 3.6.3)

Plaintiffs, therefore, request that the Court preliminarily approve the Settlement Agreement (Exhibit 1), certify the proposed California Class, appoint Class Counsel and Class Representatives to represent the settlement classes, and approve the Notice (Exhibits A & B to Exhibit 1). A Proposed Order is attached to the Terp Declaration as Exhibit D to Exhibit 1.

## II.   RELEVANT PROCEDURAL BACKGROUND

On May 22, 2018, Plaintiffs filed a class and collective action in state court, asserting federal overtime and California state law wage and hour claims, which Defendants subsequently removed to federal court. (ECF 1; *id.*, pdf. p. 7-32 of 129) Plaintiffs later amended their complaint to add representative claims under PAGA (*see* ECF 13, Second Amended Complaint) and reimbursement claims under California Labor Code section 2802 (*see* ECF 55, Third Amended Complaint).

Plaintiffs served formal written discovery requests; however, the production deadline was postponed until after mediation, except that Parties agreed to hold two depositions for each side, and Defendants produced documents informally as well as a class list. (ECF 25, pdf. pp. 2:17-3:11 of 5;

ECF 33, pdf p. 2:6-9 of 2; ECF 39, pdf p. 2:20-3:2). Plaintiffs produced documents to Defendants formally as initial disclosures and in association with their noticed depositions. (Terp Decl. ¶ 2)

Plaintiffs have investigated the strengths and weaknesses of their claims sufficiently to know that the proposed settlement is a good result, including:

- the exchange of thousands of pages of document, including corporate policies, training materials, payroll and timekeeping records and data, and internal employee complaints;
- two named Plaintiffs' full-day depositions;
- two days of Fed. R. Civ. P. 30(b)(6) depositions of Defendants; and
- Plaintiffs' interviews with dozens of putative class members, resulting in the motion for conditional certification, along with 11 supporting declarations.

(Terp Decl. ¶¶ 2, 6; ECF 32; ECF 32-1 through ECF 32-11)

On November 20, 2018, right before Plaintiffs' conditional certification motion was set to be heard, the Parties attended a full-day mediation with renowned mediator Mark Rudy, Esq. (Terp Decl. ¶¶ 3, 14; *id.* Exhibit 6), at which time they arrived at a memorandum of understanding regarding principal terms of the settlement. (ECF 40, pdf p. 2:1-27) The Parties filed and the Court granted a Notice of Settlement and Administrative Motion to Vacate All Deadlines, including the time for hearing Plaintiffs' conditional certification motion. (*Id.*; ECF 41) On January 29, 2019, since the long-form settlement was not yet finalized, the Court granted the conditional certification motion. (ECF 59)

On February 9, 2019, after extensive negotiation, especially over the details of the injunctive relief portions of the settlement, the Parties executed the long-form Settlement Agreement. (Exhibit 1; Terp Decl. ¶¶ 4, 5)

## III.    FACTUAL BACKGROUND

Defendants employ Enrollment Agents to administer and sell identity-related products and services including TSA Pre✓® and TWIC® (Transportation Worker Identification Credential), digital fingerprinting, and passport photos at its enrollment centers, located in dozens of states nationwide. (ECF 32, pdf p. 9:15-21, n.3; Terp Decl. Exhibit 2, Deposition of 30(b)(6) Designee Lindsay Savarino ("30b6 Depo. Vol. I,") pp. 22:25-23:4, 28:7-11) Defendants classify Enrollment Agents as non-exempt workers and pay them hourly wages. (ECF 32, pdf p. 10:10-11)

//

3

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

### A.    Off-the-Clock and Overtime

Plaintiffs contend that in California and nationwide, Defendants' scheduling practices caused Enrollment Agents to work off-the-clock before and after their shifts, as well as during their uncompensated lunch periods, in order to complete all of their job duties. (ECF 61, ¶¶ 18-19, 21, 24-2; ECF 32, pdf pp. 10:12-13:4 of 22) Some of the scheduling practices that have led to off-the-clock work include: prescheduling one or more customer enrollment appointments every ten minutes throughout shifts; requiring Enrollment Agents to serve all pre-scheduled appointments; requiring Enrollment Agents to accept all walk-in appointments; requiring Enrollment Agents to spend time upselling each customer on other products; assigning Enrollment Agents to perform start-of-day and end-of-day job duties – such as powering up computers, printing out daily schedules, and then powering down for the day; and, requiring Enrollment Agents to complete periodic training modules by fixed deadlines (ECF 32, pdf pp. 9:14-11:16 of 22). Overtime estimates among putative class and collective action members surveyed, generally fell between 10 and 30 minutes per day. (*E.g.*, Terp Decl. ¶ 20)

Plaintiffs' off-the-clock claims were bolstered by training practices and written policies which instructed that Enrollment Agents to arrive early to perform their "start of day procedures" (ECF 32, pdf p. 11:3-6, n.13, n.14. ECF 32-10 ¶ 10; Terp Decl., ¶ 20.b.ii.2; *id.* Exhibit 4, Deposition of Jessica Cotton ("Cotton Depo."), pp. 32:4-20, 46:23-47:12; 162:16-163:17, 166:4-19, 167:2-168:2) and testimony from Defendants' Fed. R. Civ. P. 30(b)(6) deponent that Enrollment Agents were expected to see all customers with pre-scheduled appointments (Terp Decl., Exhibit 3, Deposition of 30(b)(6) Designee Jonathan Blake Moore ("30b6 Depo. Vol. II"), p. 111:12-15).

Enrollment Agents have historically been expected to self-report their hours at least once a week into Defendants' timekeeping system. (ECF 32, pdf p. 10:10 of 22, n.10) Numerous Enrollment Agents reported that their managers encouraged them to come to their shifts early (*id.*, pdf p. 11:6-11 of 22, n.16), discouraged them from reporting any overtime or hours outside of their prescheduled shifts through written policies and training practices  (*id.*, pdf pp. 4:3-4 of 22, n. 13; *id.* ¶ 20.b.ii.2), and that some managers went so far as to erase the overtime Enrollment Agents had reported. (*Id.*, pdf p. 12:12-13:4 of 22, n.25-n.27)

Defendants would argue that the companies are insulated from liability by compliant written policies, including a policy to "pay overtime for all time actually worked." (*E.g.*, ECF 32-1, Exhibit K (2018 Employee Handbook, North America, "Overtime Pay" policy)) Defendants would point to the fact that some employees, including Plaintiffs, reported overtime hours for which they received compensation, and that to the extent Enrollment Agents worked off-the-clock, the practice varied by Enrollment Agent, supervisor, and location, such that the claims could not be tied to any single, uniform policy to deter Enrollment Agents from reporting all hours worked. (*E.g.* ECF 22 pdf pp. 4:21-5:3 of 22; Terp Decl., Exhibit 3, 30b6 Depo. Vol. II, p. 111:16-25 (different contracts provide different policies about whether Enrollment Agents must see walk-in customers)) Further, Defendants' claim that not all Enrollment Agents actually arrive early for their shift was corroborated by the testimony of named-Plaintiff Connie Rueda regarding a coworker. (Terp Decl. Exhibit 5, Deposition of Connie Rueda ("Rueda Depo.") p. 225:9-20)

If the matter had to proceed in litigation, Plaintiffs would seek to produce credible damages estimates for Enrollment Agents based, in part, on time-stamped, dual-authorization security measures that reflect hours worked in excess of what Enrollment Agents self-reported. (*See* Terp Decl. Exhibit 3, 30b6 Depo. Vol. II, pp. 25:1-26:11) However, it is likely that not all Enrollment Agents used those measures during their shift, *e.g.,* when performing a customer greeter role. (*See, e.g., id.*, p. 25:7-14) Defendants would attempt to argue that absence of log-in/log-out data for some individuals during some shifts would make it impossible to determine damages on a class-wide basis. (*E.g., id.*)

### B.    Regular Rate of Pay

Plaintiffs allege that at designated locations in California and nationwide, Enrollment Agents were required to engage in upselling activities for which they could earn commissions. (ECF 32, pdf p. 10:2-4 of 22, n.5, n.6) Plaintiffs maintain that Defendants failed to pay overtime hours that were reported based on a regular rate of pay that factored in their commission pay. (ECF 32, pdf p. 10:3-4 of 22, n.6, 13:5-11 of 22, n. 28, n. 29) Though this violation seems apparent, the scope of the violation is smaller than Plaintiffs expected upon filing the suit – with damages estimated to be in the four figures. (Terp Decl. ¶¶ 2, 20)

5

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

Defendants would argue the additional pay received by Enrollment Agents is a discretionary bonus, and that whether Enrollment Agents receive additional pay and how much is at Defendant's sole discretion or cannot be decided on a class basis.

### C. Meal and Rest Breaks

Plaintiffs allege that Defendants' scheduling practices, described in Section III.A, *supra*, have caused Enrollment Agents to miss their lawful meal and rest breaks. This claim is bolstered by the absence of written policies or training for Enrollment Agents working in California on how to take such breaks, or how to report missed breaks. (Terp Decl. Exhibit 2, 30b6 Depo. Vol. I, p. 18:15-22) Defendants' Fed. R. Civ. P. 30(b)(6) deponent testified that she had no knowledge of Defendants ever paying a missed rest break premium for a California Enrollment Agent. (*Id.*, p. 63:9-12)

On the other hand, Defendants would argue that the policy for providing breaks varied by location, time period, and supervisor, such that the issue is not appropriate for class treatment. (*E.g.*, *id.*, pp. 18:15-19:20 (Defendants expect each manager to follow state laws)) For example, Plaintiffs Cotton and Rueda both testified that they regularly took at least thirty minutes for lunch while assigned to work at Defendants' Enrollment Center in the City of Alameda, though Plaintiff Cotton regularly missed lunch breaks for some of the time she worked in Oakland. (*E.g.*, Terp Decl. Exhibit 4, Cotton Depo. 89:15-22, 138:12-16, 172:22-173:2; ECF 32-1, ¶ 11; *id.*, Exhibit 5, Rueda Depo. 149:19-24)

### D. Cell Phone Reimbursement

Enrollment Agents complained of having to use their personal cell phones during working hours in order to receive direct calls and text-messages from their off-site supervisors, or more frequently, to make troubleshooting calls during customer enrollment appointments. (ECF 32-11 ¶ 20; ECF 32-1 ¶ 15; Terp Decl. Exhibit 4, Cotton Depo. p. 76:3-24). Defendants would argue that many enrollment centers had a designated cell phone, which Enrollment Agents had the option to utilize during their shifts. (*See* ECF 32-11 ¶ 20:19-20)

### F. Derivative Claims

The remaining claims in this case, related to itemized wage statements, timely pay, unfair competition, and penalties are derivative of the above claims. *See, e.g., McCowen v. Trimac Transp.*

6

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

*Servs., Inc.*, 311 F.R.D. 579, 586 (N.D. Cal. Dec. 23, 2015) (Seeborg, J.) (treating such claims as derivative of wage and break claims).

## IV.    THE PROPOSED SETTLEMENT TERMS AND FACTORS IN THE PARTIES' DECISION TO SETTLE.

### A.    The Class Definitions

The proposed settlement encompasses a Class defined as follows:

> [A]ll current and former Enrollment Agent Is, Enrollment Agent IIs, Lead Enrollment Agents, and Mobile Enrollment Agents and similarly situated employees (collectively, "Enrollment Agents"), throughout California and elsewhere in the United States, from May 22, 2015 through the date of preliminary approval for the FLSA Collective, and from May 22, 2014 through the date of preliminary approval for the California Class, understood to be 618 people.

(Exhibit 1, ¶ 1.7) Paragraph 1.8 defines "California Class" as "Enrollment Agents, throughout California" and Paragraph 1.9 defines "FLSA Collective" as "Enrollment Agents, outside of California and throughout the United States." By these definitions Plaintiffs seek to settle the same claims for the same people based on the same facts identified in the First Amended Complaint. (ECF 61 ¶¶ 3, 4)

### B.    Settlement Terms

Under the proposed Settlement Agreement, the claims of an estimated 618 Class Members will be settled for $1.7 million, not including the employer's share of payroll taxes or any increased amount due if the number of class members or total workweeks are more than 5% greater than indicated by Defendants at the time of settlement. (Exhibit 1, ¶¶ 1.25, 2.8, 3.11) The Settlement Fund shall be distributed among:

1.    Roughly, 618 enrollment agents (*id.*, ¶¶ 1.6, 1.7, 1.25, 3.1), resulting in a gross recovery of approximately $2,751 each (Terp Decl. ¶ 17);

2.    Attorney fees, not to exceed twenty-five percent of the Settlement Fund, estimated to be $425,000 (Exhibit 1, ¶¶ 1.4, 3.14);

3.    Attorneys' litigation costs, estimated not to exceed $20,000 (*id.*, ¶¶ 3.14; Terp Decl. ¶ 27);

4.    Settlement Administration costs, estimated not to exceed $20,000, to be paid to Rust Consulting, a settlement administrator experienced in wage and hour class actions, which the Parties selected after comparing bids from several well-known administrators (Exhibit 1, ¶¶ 1.39, 3.18);

5.    Enhancement Awards, not to exceed $27,000 total – $7,500 for named-Plaintiffs Rueda and Cotton, $4,000 for named-Plaintiff Spencer, and $1,000 for the eight opt-in Plaintiffs who provided declarations in support of conditional certification (Exhibit 1, ¶ 3.13);

7

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

6.       PAGA Allocations of $50,000 total, with $37,500 to be distributed to California's Labor Workforce Development Agency ("LWDA") (*id.*, ¶¶ 1.24, 3.15).

Under no circumstances will money originally designated for class recovery revert to any Defendant. (*Id.* ¶ 1.12, 1.37, 3.12, 3.13, 3.14, 3.17) As such, the total for distribution will not be less than $1,170,550, with an average net recovery of $1,894 per class member – a considerable sum for each of the low-wage workers with the relatively small off-the-clock claims presented here. (*Id.*, ¶ 1.26, 3.1; Terp Decl. ¶ 17)

The Settlement Agreement also provides for injunctive relief aimed at addressing concretely the claims alleged in the Third Amended Complaint. (ECF 61; Exhibit 1, ¶ 3.16) During the pendency of this lawsuit, Defendants adopted a timekeeping system in the State of California that allows Enrollment Agents to clock in and out during their shifts, as opposed to self-reporting their hours. (*Id.*) Defendants have committed to adopt such a system nationwide and to adopt changes addressing Plaintiffs' other allegations by the end of 2019, including changes to meal and rest period and cell phone reimbursement reporting. (*Id.*) If the Court grants preliminary approval, Defendants will submit a declaration upon completion of these injunctive measures within a year from the preliminary approval date. (*Id.*)

In allocating the settlement fund among class and collective action members, a multiplier of two (2) will be applied to the workweeks of California Class Members to reflect the value of the additional California law claims, *e.g.,* meal/rest period claims, overtime after eight (8) hours per day, wage statement penalties, PAGA penalties, reimbursement claims. (Exhibit 1, ¶ 1.14) A second distribution of settlements checks will occur if more than $20,000 in unclaimed funds remain, ninety (90) days after the first round of checks issue. (*Id.*, ¶ 3.12.1) All funds that remain unclaimed by participating California Class Members and FLSA Collective Members at the end of the distribution process will be distributed to *cy pres.* (*Id.*, ¶ 3.12) The proposed *cy pres* recipient is the non-profit organization, Legal Aid at Work, a leading provider of free legal services to workers with wage and other employment claims in California. (Terp Decl. ¶ 40)

Plaintiffs seek approval of Rust Consulting as the Claims Administrator. Rust is a reputable claims administration firm, which submitted a competitive bid relative to two other settlement administration firms, and has provided good service to Plaintiffs' counsel in successfully administering other complex wage-and-hour settlements. (Terp Decl. ¶ 28) If the Court provides authorization to send

8

notice, the Claims Administrator will mail the Notices to all California Class Members and FLSA Collective Members, after receiving from Defendants a list of each Class Members' last-known address. (Exhibit 1, ¶ 3.6)

The agreed upon Class Notices describe the litigation, the terms of the Settlement, and the respective options for proposed California Class and FLSA Collective Members to participate in the settlement. (Exhibits A & B to Exhibit 1) The Notices provide information regarding the consequences of doing nothing, the final approval hearing, and how class members may obtain additional information about the Settlement. (*Id.*) Class Members will have the opportunity to contest the workweeks data underlying their allocation estimates, and California Class Members will have an opportunity to object to or opt out of the settlement. (*Id.*) California Class Members who do not timely opt out will be deemed members of the settlement class, whether or not they cash their settlement checks. (Exhibit 1, ¶¶ 1.41 1.42, 3.2, 3.40)

FLSA Collective Members who have not already submitted a consent-to-join form will have the opportunity to opt-into the case by cashing their settlement checks, which will contain FLSA opt-in and release language on the back of each check. (*Id.*); *see, e.g., Lee v. JPMorgan Chase & Co.*, 2015 WL 12711659, at *3 (N.D. Cal. Apr. 28, 2015) (Staton, J.) (granting final approval involving back of the settlement check opt-in method); *Sarinana v. DS Waters of America, Inc.*, 2014 WL 12770237, at *2 (June 9, 2014) (Chen, J.) (suggesting that the back of the check method for opting into FLSA settlements would likely produce a higher response rate than a traditional claims process). Plaintiffs will file a declaration from the claims administrator listing the FLSA Collective Members who opted in by cashing their settlement checks. (Exhibit 1, ¶ 1.41) All California Class Members who do not opt out and all FLSA Collective members who opt in will be subject to the judgment and the settlements' release of claims. (*Id.* ¶ 1.33; Exhibit C to Exhibit 1)

## V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.    The Settlement Satisfies the Rule 23 Requirements for Purposes of Settlement.

Preliminary approval of the proposed settlement is justified because, for settlement purposes, the settlement meets the requirements of a class action pursuant to Rule 23 and Ninth Circuit jurisprudence. The class members are numerous – there are more than 600, roughly one-fifth of whom

9

work in California. (Terp Decl. ¶ 22) Plaintiffs are typical of the Class Members and adequate representatives of the Class Members, having served as Enrollment Agents during the relevant time period, alleging that each of the California state law claims applies to them, possessing no conflicts with the Class, and retaining seasoned Class Counsel. Common questions of law and fact predominate, such as whether Defendants' appointment scheduling and job duty requirements caused Plaintiffs and the Class to work off-the-clock without receiving overtime pay, to miss meal and rest breaks without receiving premium pay, and to be denied reasonable reimbursements for use of employees' personal cell phone plans. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) (discussing Rule 23 elements). (ECF 61, ¶ 53; ECF 33 pdf pp. 10:12-13:11). A class action is the superior means of resolution. *See, e.g.*, *Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) (Tigar, J.) (superiority established because a "class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations").

### B.   The Settlement Meets the Requirements for Preliminary Approval.

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. 23(e). Before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009). Generally, the district court's review of a class action settlement is "limited." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). On preliminary approval, courts review whether the settlement is "within the range of reasonableness." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (Chhabria, J.). The court considers the settlement as a whole, rather than its components, and lacks authority to "delete, modify or substitute certain provision." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982)).

In approving a proposed class settlement, this Court considers:

[1] the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; [2] the amount offered in settlement; [3] the extent of discovery completed and the stage of the proceedings; [4] the experience and views of counsel; [5] the presence of a governmental participant; and [6] the reaction of the class members to the proposed settlement.

---

10

*Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1035-1037 (N.D. Cal. 2016) (Chhabria, J.) (quoting *Hanlon*, 150 F.3d at 1026); *see also Hunt v. VEP Healthcare, Inc.*, 2017 WL 3608297 (N.D. Cal. Aug. 22, 2017) (Chhabria, J.); *Eddings v. DS Services of America, Inc.*, 2016 WL 3390477 (N.D. Cal. May 20, 2016) (Chhabria, J.). Each of these factors supports approval here.

### 1. The Strength of Plaintiffs' Case and Risks of Continued Litigation.

Plaintiffs are confident in the strength of their claims and those of the class, their claims are not without risks.

### a. Certification of Meal and Rest Break Claims is Uncertain.

Substantial uncertainty remains as to whether the class claims would receive eventual certification. Where some attempts to certify break classes have succeeded in recent years, others have failed. *Compare Richardson v. Interstate Hotels & Resorts, Inc.*, 2018 WL 1258192, at **2-3 (N.D. Cal., Mar. 12, 2018) (Alsup, J.) (certifying rest break class for attendants at a hotel who were required to clean a minimum number of rooms per shift); *id.* at **3-4 (denying certification meal break class).

Plaintiffs faced risk on their lunch break claims. Plaintiffs allege that Defendants failed to provide training on how to report missed lunch breaks, and likely never paid a missed break premium. However, Defendants will argue they had written policies allowing for half-hour unpaid lunch breaks, and written policies requiring Enrollment Agents to report all hours worked. *See e.g., Serrano v. Aerotek, Inc.*, 21 Cal. App. 5th 772 (2018) (staffing company absolved where provided meal break policy to temporary employees, trained them on the policy, and the policy required employees to notify employer if they believed they were being prevented from taking breaks); *Wilson v. TE Connectivity Networks, Inc.*, 2017 WL 1758048, at **2, 7-8 (N.D. Cal. Feb. 9, 2017) (LaPorte, M.J.) (denying certification of meal break class where employer provided evidence of formal break policies and supervisor trained, even where defendants admitted to never paying a missed meal premium). Further, Defendants would argue that lunch break policies varied by enrollment center, supervisor and the type of service provided, making it hard to determine liability and damages on a class-wide basis. Plaintiff Rueda testified, for example, that she regularly received lunch breaks throughout her employment. *See Richardson*, 2018 WL 1258192 at **3-4 (denying certification of lunch break class where plaintiff testified she consistently took thirty-minute meal breaks, provided scant evidence supervisors

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

interrupted her lunch, and failed to articulate a viable policy or practice by which defendant denied lawful meal breaks). *See supra*, Section III.C.

### b. Certification of Off-the-Clock Claims is Uncertain, and Such Claims are Challenging to Prove.

Off-the-clock cases of this nature have been certified in recent years. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1163 (9th Cir. 2014) (affirming class certification of off-the-clock claims); *Richardson*, 2018 WL 1258192, at *6 (certifying off-the-clock overtime claims). At the same time, conditional and class certification of off-the-clock cases is regularly denied. *See, Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102, 1120-1121 (9th Cir. 2018) (decertifying an FLSA collective action based on off-the-clock claims, filed 14 years prior). While Plaintiffs assert that Defendants maintain common policies causing Plaintiffs to work off the clock, there is no guarantee the Court would agree.

Even if Plaintiffs certified their off-the-clock claims and prevailed on the merits, the damages phase would likely have required substantial expert costs. (Terp Decl. ¶ 24) While Defendants' dual authentication security system recorded the time actually worked as compared with the time many Enrollment Agents self-reported, some Enrollment Agents worked shifts in capacities that did not require dual authentication. *See supra* Section III.A. Further discovery could reveal further complexity in arriving at a damages calculation. The Settlement Agreement avoids that uncertainty, by allocating money to anyone who may have worked off-the-clock hours in the covered jobs, without requiring each claimant to undergo a difficult process of attempting to document the nature and extent of his or her off-the-clock work. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460, at *6 (N.D. Cal. Aug. 2, 2011) (Chen, J.) (risks related to calculating off-the-clock damages supported settlement approval).

### c. Commission Pay Violations Appear Limited

Plaintiffs are confident they would obtain summary judgment on Defendants' regular rate of pay violations. *See supra* Section III.B; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment available where there is "no *genuine* issue of *material* fact"). However, the damages for such claim appear too small to justify lengthy and costly litigation, standing alone.

### d. De Minimis Doctrine Could Have Drastically Reduced Recovery for the Collective.

FLSA Collective members' recovery could also have been significantly reduced if Defendants were successful in arguing the collective action members' federal overtime claims are *de minimis*. Overtime and off-the-clock claims are based in part on Enrollment Agents' pre-shift and post shift duties, including powering up computers, printing out daily schedules, and then powering down for the day. *See supra* Section III.A. Plaintiffs believe this time should be compensable, and recent California law supports this position. *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018) (holding employer may not require employee to work regularly for non-trivial periods without compensation). However, federal law is less favorable regarding preliminary and post-liminary work. 29 C.F.R. § 790.8(c); *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513 (2014); *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir 2010) (holding employee's time spent receiving, mapping, and prioritizing jobs and routes for assignment each morning prior to driving to the first job was *de minimis* and should be considered part of the employee's noncompensable commute time); *Ino v. Gap, Inc.*, 2014 WL 12776370, at *1 (N.D. Cal. July 28, 2014) (Chhabria, J.) (dismissing FLSA off-the-clock claims with prejudice based on *de minimis* doctrine, where pre-shift work included retrieving schedules).

### e.    Cell Phone Use May be Deemed Unnecessary.

Plaintiffs would argue that using a personal cell phone was necessary in performing their job duties because they were required to call Defendants' when technical or other issues arose during appointments several times as day, and respond to supervisor texts and email. *See supra* Section III.D. Plaintiffs believe that whether the work-related cell-phone expenses were "necessary" as opposed to merely optional or voluntary is a common question that may be certified in this case. *Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 339 (N.D. Cal. 2018), *modified*, 2018 WL 2197527 (N.D. Cal. May 14, 2018) (Gonzalez Rogers, J.); *Richie v. Blue Shield of California*, 2014 WL 6982943, at *17 (N.D. Cal. 2014) (Chen, J.) (same). However, there is risk Defendants could succeed in arguing such expenses were unnecessary, or unnecessary at every location, as evidence exists that Defendants provided a company-issued cell phone to some enrollment centers. *See supra* Section III.D.

### f.    Defendant May Have Succeeded in its Good-Faith Defenses.

Under FLSA and the California Labor Code, Plaintiffs must prove Defendants' alleged violations were willful for maximum recovery. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir.

13

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS, CASE NO.: 3:18-cv-03794-VC

2003) (defining FLSA standard for willfulness); *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005) (defining willfulness standard under Labor Code § 203); *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014) (Tigar, J.) (defining standard for a "knowing and intentional" violation under Cal. Lab. Code § 226). Absent settlement, Defendants might have persuaded the trier of fact they lacked the requisite intent, and would have argued for decertification of penalty claims based upon individualized willfulness considerations. If Plaintiffs were unable to establish the proper intent, the FLSA statute of limitations would reduce to two years. *See* 29 U.S.C. § 255(a). Defendants successfully asserting a good-faith defense would also bar Plaintiffs' class claims under California Labor Code sections 203 and 226 and eliminate the collective's liquidated damages. *See* 29 U.S.C. § 260.

### g.   Plaintiffs May Have Recovered Less in Interest and Penalties.

The Parties agree two thirds of the Settlement payment relates to interest and penalties. (Exibit 1, ¶ 3.12). This estimate is reasonable because the penalty claims asserted are a significant proportion of the estimated damages exposure and because California's statutory prejudgment interest rate is ten percent and would have begun to accrue as early as May 2014. *See Bell v. Farmers Ins. Exch.*, 135 Cal. App. 4th 1138, 1150 (2006) (affirming 10% prejudgment interest rate provided by Cal. Civ. Code § 3289 applied to the accrual of unpaid wages under Cal. Lab. Code § 218.6).

Absent the Settlement, Plaintiffs would risk failing to recover interest and penalties, in full or in part. Liquidated damages and prejudgment interest are not *both* awarded after a successful judgment in an FLSA case. *See Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986). The Ninth Circuit has also permitted only partial prejudgment interest. *See Martin v. Applied Data Sys.*, 972 F.2d 1340 (9th Cir. 1992). Defendants asserting a good-faith defense have long argued a court may deny both interest and liquidated damages. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945).

California penalty recoveries are capped and limited by shorter statutes of limitations. *See Pineda v. Bank of Am., N.A.*, 50 Cal. App. 4th 1389, 1398 (2010) (one year under Cal. Lab. Code § 226 and up to three years under Cal. Lab. § 203); Cal. Lab. § 226(e)(1) ($4,000 maximum recovery). Thus, the Court should favorably view the Settlement's significant penalty and interest compensation.

### h.   The Risks and Costs of Proceeding, and of Maintaining Class Action Status through Trial, Favor Approval.

14

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

The uncertain outcome of trial and appeals is a strong incentive for the Parties to settle. The Ninth Circuit has explained, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "'[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .'" *Id.* (quoting *Officers for Justice*, 688 F.2d at 625).

In this case, there are significant risks associated with continued litigation of the claims. The Court's decision on an eventual class certification motion may have drawn a Federal Rule of Civil Procedure 23(f) appeal. A decertification motion and resulting appeal could cause further delay. *See Campbell*, 903 F.3d at 1120-1121 (decertifying an FLSA collective action based on off-the-clock claims, 14 years after the case was filed). Such motion and appellate practice would expend great time and resources. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Even if Plaintiffs maintained a class and prevailed at trial, post-judgment appeals could follow.

Without a settlement, the Class would not recover for years, but this Settlement provides meaningful recovery within about a year after the lawsuit was first filed. Under the Settlement, Defendants will deliver the total Settlement Fund to the third-party administrator within fifteen days of final approval. (Exhibit 1, ¶ 3.11.1) Class Members will receive payments by mail without having to undergo a claims process. (*Id.* ¶¶ 3.12, 3.40)

### 2. The Extent of Discovery Completed and the State of Proceedings.

"Courts look to the amount of exchanged information prior to settlement to determine whether the parties have made an informed decision to settle the case." *Willner v. Manpower Inc.*, 2015 WL 3863625, at *4 (N.D. Cal. June 22, 2015) (Tigar, J.); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.1998). As detailed in the undersigned counsel's declaration, the Parties have exchanged thousands of pages of documents through informal and formal discovery, and have taken two corporate designees' and two named-Plaintiffs' depositions. This discovery, in addition to Plaintiffs' independent investigation, which included interviews with dozens of class members, has provided Plaintiffs with the

information they need to make informed decisions about the strengths and weakness of their claims. (*See* Terp Decl. ¶¶ 2, 8-11).

### 3.    The Experience and Views of Counsel.

Plaintiffs' counsel recommends approval of the settlement. (*See* Schwartz Decl. ¶ 5; Terp Decl. ¶ 16). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (Orrick, J.); *see also Rodriguez*, 563 F.3d 948, 965 (9th Cir. 2009) ("we put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.").

Plaintiffs and undersigned counsel support the Settlement because the Settlement – which will allow the Parties to avoid further, protracted, costly litigation, and which will provide certain significant compensation to the Class Members and injunctive relief going forward – is a strong outcome for the Class. (*See* Schwartz Decl. ¶ 5; Terp Decl. ¶ 16)

There is also no reversion to Defendants unless the Settlement fails. (Exhibit 1, ¶ 3.17). *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (disfavoring reversionary settlements).

Counsel also favor this Settlement because the proposed release only requires participating Class Members (other than the named Plaintiffs) to release claims related to the facts and/or causes of action alleged in the complaint (Exhibit 1, ¶ 1.33). *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (preliminarily approving settlement in which class members only released claims "based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law."). *Cf. Kakani v. Oracle Corp.*, 2007 WL 1793774, at *3 (N.D. Cal. June 19, 2007) (Alsup, J.) (disapproving settlement with overly-broad release).

### 4.    The Presence of a Government Participant

There has been no government participant in this case. Plaintiffs exhausted their PAGA claim with the LWDA, and the LWDA chose not to intervene or otherwise take any action in this case. (ECF 61-4, pdf p. 2 of 4; Terp Decl. ¶ 42)

### 5.    The Reaction of the Class Members to the Proposed Settlement

16

The Court will be in a better position to gauge Class Members' reaction once they have received and had an opportunity to respond to the Notice, if the Court preliminarily approves this Settlement.

### 6.      The Amount Offered In Settlement.

The primary inquiry at preliminary approval is whether Plaintiff's expected recovery absent settlement balances appropriately against the value of the settlement offer. *See Harris v. Vector Marketing Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (Chen, J.). Courts consider "the factors that ultimately inform final approval" (*id.*), i.e., those set forth in *Cotter*, 193 F.Supp.3d at 1035-1037, and as discussed above.

Under Settlement Agreement, Defendants have agreed to make a $1,700,000 guaranteed payment (including a $50,000 payment for PAGA) into a Settlement Fund. (Exhibit 1 ¶ 1.45) Associated expenses, such as attorneys' fees and costs, incentive awards, settlement administration fee, and PAGA payments to the LWDA, are to be paid out of the Settlement Fund, leaving $1,170,500 to be distributed among Class Members. (Exhibit 1 ¶ 1.26) Plaintiffs estimate that including unpaid wages, premiums, reimbursements, interest, and penalties including PAGA penalties, Class Members' claims are worth at most $6,025,751.71. (Exhibit 1, ¶¶ 1.26, 3.1; Terp Decl. ¶ 21). The Settlement Fund represents 28.2% of that amount, and the Net Settlement Fund represents 19.4% of that amount. (*Id.*) The estimated amount of federal and California state unpaid wages and unreimbursed costs exclusive of interest and penalties is $3,151,783.53, meaning the settlement represents more than 54% of that amount. (*Id.* ¶ 21) This calculation of potential damages for Defendants' failure to pay for all hours worked including overtime, failure to provide meal and rest breaks, reimbursement, and derivative claims are based upon Plaintiffs' analysis of the time and payroll data provided by Defendants as well as information obtained from Plaintiffs and many Class Members. (Terp Decl. ¶¶ 2, 19, 20)

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (Conti, J.).

17

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

This settlement, providing a net of $1,894 per person, on average, compares favorably with other off-the-clock settlements in similar cases. *See, e.g.*, *Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255, at **1-2 (N.D. Cal. Oct. 11, 2017) (Gilliam, J.) (granting preliminary approval for $952,000 gross settlement of off-the-clock, and meal and rest break claims, for 1,168 individuals for a gross average recovery of approximately $800 per person); *Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, Case No. 13:-cv-00672 (E.D. Cal. June 9, 2015) (ECF 30) (attached as Exhibit 7 to Terp Decl.; *id.* ¶ 23) (granting final approval, for a settlement providing $100,000 gross to be distributed to the 88 class members, for a gross average payment of $1,136.26, constituting 10.5% of the maximum estimated value of the claims); *id.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014); *O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (ECF Nos. 84, 92) (N.D. Cal. 2014) (Spero, M.J.) (attached as Exhibit 8 to Terp Decl.; *id.* ¶ 23) (approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net average payment) where total exposure before penalties and interest was estimated at $108 million, for a recovery of less than 3% of full relief); *Ma v. Covidian Holding, Inc.*, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'"); *Tijero v. Aaron Brothers, Inc.*, 301 F.R.D. 314, 319 (N.D. Cal. 2013) (Armstrong, J.) (granting preliminary approval for $800,000 in settlement involving approximately 269,941 workweeks, or $3.00 gross per workweek, in off the clock and breaks case).

Prospective relief must be considered in evaluating the true value of a settlement. *See, e.g., In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (considering that benefits to the class went beyond the settlement fund); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922-23 (9th Cir. 2014) (de-published on other grounds) (taking injunctive relief into account in assessing settlement value); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ("Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in evaluating a class settlement). Factoring in Defendants' meaningful reforms, as well as Defendants' payment of payroll taxes, this Settlement's recovery warrants approval.

### C.   The Incentive Awards Are Appropriate.

---

18

Plaintiffs request the Court's approval of incentive payments to the three named-Plaintiffs and the eight opt-in Plaintiffs who provided declarations in support of Plaintiffs' motion for conditional certification. Enhancement awards should be evaluated using "'relevant factors, includ[ing] the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the Plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s] of workplace retaliation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

By initiating this lawsuit, the three named Plaintiffs were personally exposed to potential adverse consequences related to current and future employers. *See Rutti v. Lojack Corp.*, 2012 WL 3151077, at **5-6 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA"); *Ross v. U.S. Bank Nat'l Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (Illston, J.) (service awards based on "willingness to serve as representatives despite the potential stigma that might attach to them in the banking industry from taking on those roles"). Named-Plaintiffs Jessica Cotton and Connie Rueda were current employees at the time they filed the lawsuit, and risked retaliation. (*See* ECF 1, Notice of Removal, pdf. p.1 (original complaint filed May 22, 2018); ECF 55 ¶¶ 8-9; ECF 32-1, ¶ 1; ECF 32-2, ¶ 2) Named-Plaintiff Spencer has also taken risks by affiliating herself publicly with the lawsuit as a named plaintiff. The named Plaintiffs tolled the statutes of limitations for the California state law claims, to the benefit California Class Members. Further, the named Plaintiffs were substantially involved in the litigation, reviewing documents, drafting their declarations in support of conditional certification, and making themselves available for mediation. (Terp Decl. ¶¶ 30-37) Named Plaintiffs Cotton and Rueda prepared for and submitted to depositions, in addition to producing substantial formal document production and attending mediation in person. (*Id.* ¶¶ 30, 33) The named Plaintiffs were substantially involved throughout the litigation, educating Class Counsel regarding Class Members' job duties and Defendants' policies and procedures. (*Id.* ¶ 35) Further, the named Plaintiffs agreed to a general release of claims as to Defendants. (Exhibit 1 ¶ 3.3)

19

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

1    Under similar facts, this Court has awarded substantial enhancement payments to Class

2    Representatives. *See Buckingham v. Bank of America, N.A.*, No. 3:15-cv-6344-RGS (N.D. Cal.) (ECF

3    No. 103, at pdf pp. 9:25-26 of 11, filed Jul. 11, 2017) (Seeborg, J.) (approving $15,000 service award to

4    class representative who initiated lawsuit) (attached as Exhibit 9 to Terp Decl.; *id.* ¶ 39); *Guilbaud v.*

5    *Sprint Nextel Corp.*, 2016 WL 7826649, at *4 (N.D. Cal., Apr. 15, 2016) (Chhabria, J.) (approving

6    service awards of $10,000 each for the named plaintiffs); *Galeener v. Source Refrigeration & HVAC,*

7    *Inc.*, 2015 WL 12977077, at *2 (N.D. Cal., Aug. 21, 2015) (Chhabria, J.) (awarding California class

8    representative $25,000 for his service as a class representative, in addition to his individual settlement

9    share); *Galeener v. Source Refrigeration & HVAC*, 2015 WL 12976106, at *3 (N.D. Cal. Aug. 20,

10   2015) (Chhabria, J.) (same).

11       The eight opt-in declarants supporting conditional FLSA certification – which this Court

12   granted – also strengthened the class and collective claims by corroborating the allegations in this case

13   in multiple locations, including locations around California and the United States, thereby enhancing

14   the case's overall value by increasing Defendants' potential exposure. (*Id.* ¶ 38) Their efforts to step

15   forward on behalf of the Class should also be rewarded. *See, e.g., Johnson v. Quantum Learning*

16   *Network, Inc.*, 2017 WL 747462, at *7 (N.D. Cal. Feb. 27, 2017) (Koh, J.) (approving $1,000 incentive

17   award "is reasonable in light of the risk . . . in opting in prior to settlement, at a stage of the lawsuit in

18   which others did not step forward")./

19       **D.    Attorneys' Fees and Costs are Appropriate**

20       Before final approval, Plaintiffs' Counsel intends to seek attorneys' fees of $425,000, or one-

21   quarter of the Settlement Fund.[1] Courts may award class counsels' fees according to the percentage of

22   the common fund sufficient to provide a reasonable fee. *See Paul, Johnon, Aliston & Hunt v. Graulty*,

23   886 F.2d 268, 272 (9th Cir. 1989). The Ninth Circuit has established twenty-five percent of the

24   common fund as a benchmark award for attorneys' fees, meaning that fee requests for this percentage

25   are presumptively reasonable. *Hanlon*, 150 F.3d 1011, 1029; *Bellinghausen v. Tractor Supply Co.*, 306

26   F.R.D. 245, 265 (N.D. Cal. Mar. 20, 2015) (Corley, J.). Although Plaintiffs' Counsel will separately

---

[1] The actual settlement value is greater because Defendants will pay their share of the payroll taxes, and have agreed to injunctive relief terms. *See supra* Section IV.B.

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

and more extensively brief their fees and costs petition prior to final approval, Plaintiffs' Counsel requests preliminary approval of this presumptively reasonable benchmark fee amount, plus up to $20,000 in costs (actual costs are currently approaching $19,323.85). (Terp Decl. ¶¶ 25, 27).

When determining fees, Courts consider not only the results achieved, but also the risk of litigation, the contingent nature of the fee, and the financial burden carried by the Plaintiffs. *See, e.g.*, *In re Omnivision Techs., Inc.*, 2007 WL 4293467, at *9 (N.D. Cal. 2007) (Conti, J.) (citing *Vizcaino*, 290 F.3d at 1048-50). Settling a case quickly "in many instances . . . may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino*, 290 F.3d at 1050 n.5. This is particularly true in the context of unpaid wages, where there is a recognized public policy interest in the prompt payment of wages. *See Biggs v. Wilson*, 1 F.3d 1537, 1541-1542 (9th Cir. 1993).

Here, the prompt result achieved, the substantial awards to Class Members, the injunctive relief obtained, and the non-reversionary nature of the Settlement, among other things, justify Plaintiffs' counsel's request for the benchmark fee award. Class Counsel will file the fees and costs motion thirty-five days prior to the close of the notice period, so as to provide Class Members with time to review and respond to the motion. (*See* Exhibit D, to Exhibit 1; Northern District's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/ClassActionSettlementGuidance (last visited Jan. 21, 2019))

An optional lodestar cross-check will ultimately also support the benchmark fee award. "Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006-1007 (9th Cir. 2002). "Because there is a strong presumption that the lodestar amount represents a reasonable fee, adjustments to the lodestar "'are the exception rather than the rule.'" *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (quoting *Fischel*, 307. F.3d at 1007). The undersigned estimates that the lodestar will result in a modest multiplier of less than 1.4 in this case. (Terp Dec., ¶ 25) This multiplier is lower than multipliers often awarded in similar cases. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 & n.6 (affirming lodestar multiplier of 3.65 in light of the complexity and risk, and compiling cases with multipliers up to 19.6); *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("Although this

21

[6.85x] multiplier is higher than those in many common fund cases . . . it still falls well within the range of multipliers that courts have allowed"); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (approving 5.5. multiplier); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 33480455, at **1-2 (N.D. Cal. June 30, 2011) (in lodestar cross-check of 25% of $12.5 million common fund fee award, approving 4.3 multiplier, and collecting cases with multipliers ranging from 4.4 to 9.3); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123, 1125 (C.D. Cal. 2008) (applying a 5.2 multiplier and collecting cases with cross-check multipliers ranging from 4.5 to 19.6). *See also Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *1, 10-11 (S.D.N.Y. Oct. 2, 2013) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)) (in misclassification class action, approving 7.6x multiplier cross-check, declining to "penaliz[e] plaintiffs' counsel for achieving an early" but "substantial" settlement).

### E. The Proposed Notice is Sufficient.

The proposed California Class Notice and proposed method of distribution are appropriate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Churchill Villiage, LLC. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The California Class Notice is written in a straightforward manner. (*See* Exhibits A & B to Exhibit 1).  Defendant has represented that the majority of Enrollment Agents speak and read English (Terp Decl. ¶ 13); therefore, the notice will be distributed in English only. The California Class Notice will provide the details of the case and the proposed Settlement and the specific options available to class members, as described above. (Exhibit A to Exhibit 1) The California Class Notice will provide class members with information from which they can make an informed decision about whether to opt out, object, or take no further action and receive a payment from the proposed settlement. (*Id.*)

The method of distribution of the California Class Notice is designed to reach the California Class Members. The proposed form of notice will be sent via first-class mail to each class member and prior to mailing, the Settlement Administrator shall perform a search on the United States Postal Service's National Change of Address database to review the accuracy and if possible update Class Member mailing addresses. (Exhibit 1, ¶¶ 3.6.3, 3.6.4) Thus, the proposed California Class Notice and distribution plan are adequate.

The same is true of the notice to FLSA collective action members. (Exhibit B to Exhibit 1) As clearly explained, FLSA Collective Members will only be bound by the terms of the Settlement Agreement if they have already opted-into the action, or opt-in by choosing to cash their settlement distributions. (Exhibit 1, ¶ 1.23, 3.2)

F.     **The *Cy Pres* Awardee is Appropriate.**

Plaintiffs' Counsel requests that the Court designate Legal Aid at Work (legalaidatwork.org) as the *cy pres* recipient. (Exhibit 1, ¶ 3.12.1) Legal Aid at Work meets the *Dennis v. Kellogg Co*., 697 F.3d 858, 865 (9th Cir. 2013) test, "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." The present case seeks to enforce wage protections, and about one fifth of Class Members (including the three named Plaintiffs) performed their work in California. (Terp Decl. ¶ 22; ECF 32-1; ECF 32-2; ECF 32-3) Legal Aid at Work is the leading provider of direct legal services in employment law for low-wage workers in California. (Terp Decl. ¶ 40). As set forth in counsels' declarations, Plaintiffs' Counsel has no financial stake in the organization receiving *cy pres*. (Schwartz Decl. ¶ 6; Terp Decl. ¶ 41; Thomas Decl. ¶ 3).

G.     **The PAGA Allocation is Reasonable.**

The PAGA portion of a settlement must be reviewed and approved by the Court. Cal. Lab. C. § 2699(l)(2). Neither the Act nor state law squarely address the standard of review for PAGA claims. *See, e.g. Flores v. Starwood Hotels & Resorts Worldwide, Inc.* 253 F.Supp.3d. 1074, 1075 (C.D. Cal. 2017) ("[N]either the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the California Labor & Workforce Development Agency (LWDA)" has definitively addressed the standard of review for PAGA). "[C]lass action requirements . . . need not be met when an employee's representative action against an employer is seeking civil penalties under [PAGA]." *Arias v. Sup. Ct.*, 46 Cal.4th 969, 975 (2009).

The Northern District applies a "sliding scale" approach to considering settlements that contain both class claims and representative PAGA claims, which permits a small award of PAGA penalties where the settlement for the class "is robust" and "not only vindicates the rights of [] class members as employees, but may have a deterrent effect upon the defendant [] and other employers, an objective of PAGA." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (Chen, J.);

23

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

1   *O'Connor v. Uber, Inc.*, 201 F.Supp.3d 1110, 1134-35 (N.D. Cal. Aug. 18, 2016) (Chen. J.). *See also*

2   *Nordstrom Com'n Cases,* 186 Cal.App.4th 576, 589 (2010) (PAGA settlements must be considered in

3   the context of "the overall settlement of the case" and need not allocate any portion of the recovery to

4   PAGA penalties to warrant court approval).

5        The deterrent effect upon Defendants is strong in this case, because Defendants have agreed to

6   injunctive relief measures. (Exhibit 1, 3.16). Defendants have already implemented a timekeeping

7   system in California that is more likely to accurately report and compensate the time Plaintiffs worked

8   (*id.* 3.16.1, 3.16.2), and Defendants have agreed to adopt additional changes by the end of the calendar

9   year, which address Plaintiffs' allegations (*id.* 3.16.3-3.16.7).

10        Here, the $50,000 PAGA allocation is 2.9% of the Settlement Fund, and 6.7% of the estimated

11   value of the PAGA claims. (Terp Decl. ¶ 45). This amount is reasonable as compared to the allocation

12   ratios approved for other class actions with PAGA components. *See, e.g.*, *Viceral v. Mistras Grp. Inc.*,

13   2017 WL 661352, at ** 1, 3 (N.D. Cal. Feb. 17, 2017) (Chen, J.) (approving PAGA penalties worth

14   0.33% of gross settlement and worth 0.15% of total estimated value of PAGA claims where plaintiffs

15   faced risks of recovering on their PAGA claims); *Alexander v. FedEx Ground Pkg. Sys., Inc.*, 2016 WL

16   1427358, at *2 (N.D. Cal. Apr. 12, 2016) (Chen, J.) (0.7% PAGA allocation); *Vazquez v. USM Inc.*,

17   2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (Donato, J.) (0.67%); *Cruz v. Sky Chefs, Inc.*, 2014

18   WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) ) (Ryu, J.) (0.57%).

19        Valuation of PAGA claims must be considered in light of the substantial risk of losing, or

20   diminution of value of the claims at trial. California Labor Code section 2699(e) provides that a court

21   has discretion to award PAGA penalties, and determines the amount of penalties to award. For

22   example, after a recent trial against McDonald's, plaintiffs won just $700,270 in PAGA penalties,

23   which their expert valued at $41 million. (*See* Terp Decl., Exhibit 10, *Sanchez v. McDonald's*

24   (Statement of Decision) at 24-25; *id.* ¶ 46; *id.*, Exhibit 11 (June 12, 2017, *Daily Journal* article

25   concluded "McDonald's won after PAGA trial"); *id.* ¶ 47). That the plaintiffs in that case achieved less

26   than two percent of claimed PAGA penalties, after a full trial, warrants discounting the PAGA

27   allocation substantially at this stage of the case.

28        Here, where the Class is receiving a substantial percentage of their potential wage and

reimbursement recovery, and injunctive relief, the Court should view as reasonable the 2.9% PAGA allocation.

### H.      The Settlement is Also Reasonable Under the FLSA's Review Standard.

When an employee brings a private action for wages under 29 U.S.C. § 216(b), the parties must present any proposed settlement for approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). If the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," a stipulated judgment is appropriate. *Id.* at 1355. Settlements of FLSA claims are permissible because initiation of the action "provides some assurance of an adversarial context." *Id.* at 1354. Employees are likely to be represented by an attorney who can protect their rights, so "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* If the settlement reflects a reasonable compromise over disputed issues, approval is permissible. *Id.* Here, FLSA claims are based on low estimates of daily off-the-clock work and small value regular rate of pay violations. (Terp Decl. ¶ 20)

For the reasons discussed above, this Settlement of FLSA claims is fair and reasonable, and the Court should approve it as a reasonable compromise of disputed wage claims.

## V.      CONCLUSION

For the reasons stated above, Plaintiffs request that the Court (1) preliminarily approve the Settlement; (2) certify the proposed California Class for settlement purposes only (the FLSA collective having already been conditionally certified); (3) name Bryan Schwartz Law as Class Counsel, and Plaintiffs as Class Representatives; (4) name Rust Consulting as Claims Administrator; (5) approve the Notices to be sent to the California Class and Non-California classes; and (6) schedule a final approval hearing date.

Dated: February 22, 2019

BRYAN SCHWARTZ LAW

By: */s/ Rachel M Terp*
Rachel M. Terp
*Attorneys for Plaintiffs and
Others Similarly Situated*

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF CLASS ACTION
SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC