BRYAN SCHWARTZ LAW
BRYAN SCHWARTZ (SBN 209903)
RACHEL TERP (SBN 290666)
180 Grand Ave., Suite 1380
Oakland, California 94612
Tel: (510) 444-9300
Fax: (510) 444-9301
Email: bryan@bryanschwartzlaw.com
rachel@bryanschwartzlaw.com

*Attorneys for Plaintiffs and FLSA Collective,
Putative California Class, and on behalf
of the general public*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORINA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| Connie Rueda, Jessica Cotton, and Shelia Spencer, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>        Plaintiffs,<br><br>  vs.<br><br>Idemia Identity & Security USA, LLC, MorphoTrust USA, LLC, and Does 1-50,<br><br>        Defendant. | CASE NO.: 3:18-cv-03794-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Originally filed: May 22, 2018<br>Removal date: June 25, 2018<br>Trial date: None set<br><br>Hearing Date: August 22, 2019<br>Time: 10:00 a.m.<br>Courtroom: 4<br>Judge: Hon. Vince Chhabria |

1

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

# NOTICE OF MOTION AND MOTION

TO DEFENDANTS AND DEFENDANTS' COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 22, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., 17th Floor, San Francisco, California 94102, Plaintiffs Connie Rueda, Jessica Cotton, and Shelia Spencer ("Plaintiffs") will and hereby do move for preliminary approval of the parties' Amended Stipulation of Class Action, Collective Action, and Representative Action Settlement and Release ("Amended Settlement") to resolve the class and collective action Plaintiffs filed on behalf of Enrollment Agent Is, Enrollment Agent IIs, Mobile Enrollment Agents, and Lead Enrollment Agents (hereinafter "Enrollment Agents") against Defendants Idemia Identity & Security USA, LLC and MorphoTrust USA, LLC (hereinafter "Defendants").[1] By this motion, and at the hearing, Plaintiffs' counsel will request that the Court: (1) preliminarily approve the Amended Settlement; (2) certify the proposed California Class and FLSA Collective for settlement purposes only; (3) name Bryan Schwartz Law as Class Counsel, and Plaintiffs as Class Representatives; (4) name Rust Consulting as Claims Administrator; (5) approve the Notices to be sent to the California Class and FLSA Collective; and (6) schedule a final approval hearing date.

This Motion is based upon: this Notice of Motion and Unopposed Motion for Preliminary Approval of Amended Class Action Settlement and Certification of Settlement Class; the accompanying Memorandum of Points and Authorities; the supporting Declaration of Attorney Rachel M. Terp ("Terp Decl.") and accompanying exhibits including the "Amended Stipulation of Class Action, Collective Action, and Representative Action Settlement and Release" ("Amended Settlement") attached as Exhibit 1 to the declaration; the supporting Declaration of Attorney Bryan J. Schwartz ("Schwartz Decl."); well as arguments of counsel, papers, records, and pleadings in this matter.

---

[1] The Court ordered this Motion to be filed by July 15, 2019. With apologies to the Court, because the fully-executed agreement was not complete until 5:11 p.m. on July 15th, and because Exhibit E to the Settlement (defining the group included) was not confirmed until 12:06 p.m. on July 16th (today), this Motion could not be filed until July 16th. However, the July 16, 2019 filing preserves the same hearing date – August 22nd – as if the Motion had been able to be filed July 15th.

1

2   Dated: July 16, 2019                      BRYAN SCHWARTZ LAW

3                                             By: */s/ Rachel M. Terp*_____

4                                             Bryan J. Schwartz, Esq.
                                              Rachel M. Terp, Esq.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................ 1

II.  RELEVANT PROCEDURAL BACKGROUND ............................................................ 3

    A.  Procedural History Prior to Initial Preliminary Approval Hearing ...................... 3

    B.  Procedural History After the Initial Preliminary Approval Hearing ................... 4

III.  FACTUAL BACKGROUND .......................................................................................... 4

    A.  Off-the-Clock and Overtime ................................................................................. 4

    B.  Regular Rate of Pay. ............................................................................................. 6

    C.  Meal and Rest Breaks ........................................................................................... 7

    D.  Cell Phone Reimbursement ................................................................................... 8

    E.  Derivative Claims ................................................................................................. 8

IV.  THE PROPOSED SETTLEMENT TERMS AND FACTORS IN THE PARTIES'
DECISION TO SETTLE. ................................................................................................. 8

    A.  The Class Definitions ............................................................................................ 8

    B.  Settlement Terms .................................................................................................. 9

V.  THE COURT SHOULD PRELIMINARILY APPROVE THE AMENDED
SETTLEMENT ............................................................................................................... 11

    A.  The Amended Settlement Satisfies the Rule 23 Requirements for Purposes of Settlement
....................................................................................................................... 11

    B.  The Amended Settlement Meets the Requirements for Preliminary Approval ............. 12

        1.  The Strength of Plaintiffs' Case and Risks of Continued Litigation. ................... 13

            a.  Certification of Off-the-Clock Claims is Uncertain, and Such Claims are
Challenging to Prove ................................................................................. 13

            b.  The De Minimis Doctrine Could Drastically Reduce FSLA Recovery ......... 14

            c.  Certification of Meal and Rest Break Claims is Uncertain ........................... 14

4

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

|   | d. | Commission Pay Violations Appear Limited | 15 |
|   | e. | Cell Phone Use May be Deemed Unnecessary | 15 |
|   | f. | Defendant May Have Succeeded in its Good-Faith Defenses | 16 |
|   | g. | Plaintiffs May Have Recovered Less in Interest and Penalties | 16 |
|   | h. | The Risks and Costs of Proceeding, and of Maintaining Class Action Status through Trial, Favor Approval. | 17 |

| 2. | The Extent of Discovery Completed and the State of Proceedings | 18 |
| 3. | The Experience and Views of Counsel | 18 |
| 4. | The Presence of a Government Participant | 19 |
| 5. | The Reaction of the Class Members to the Proposed Settlement | 19 |
| 6. | The Amount Offered In Settlement | 19 |

| C. | The Incentive Awards Are Appropriate | 21 |
| D. | Attorneys' Fees and Costs are Appropriate | 22 |
| E. | The Proposed Notice is Sufficient | 23 |
| F. | The *Cy Pres* Awardee is Appropriate | 23 |
| G. | The PAGA Allocation is Reasonable | 24 |
| H. | The Amended Settlement is Also Reasonable Under the FLSA's Review Standard | 25 |

| VI. | CONCLUSION | 25 |

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. FedEx Ground Package System, Inc.*,
   2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ...................................................24

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ..........................................................................18

*Alvarez v. IBP, Inc.*,
   339 F.3d 894 (9th Cir. 2003) ............................................................................16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..........................................................................................15

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) .......................................................22

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................18

*Brooklyn Savings Bank v. O'Neil*,
   324 U.S. 697 (1945) ..........................................................................................17

*Buckingham v. Bank of America, N.A.*,
   Case No. 3:15-cv-6344-RGS (N.D. Cal.) ..........................................................22

*Campbell v. City of Los Angeles*,
   903 F.3d 1090 (9th Cir. 2018) .....................................................................13, 17

*Castro v. ABM Industries, Inc.*,
   2018 WL 2197527 (N.D. Cal. May 14, 2018) ...................................................16

*Churchill Village, LLC v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................23

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..........................................................................17

*Cleveland Groceryworks.com, LLC*,
   200 F. Supp. 3d 924,945 (N.D. Cal. Aug. 4, 2016) ..........................................13

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016) ..............................................................12

*Cotter v. Lyft, Inc.*,
   193 F. Supp. 3d 1030 (N.D. Cal. 2016) .......................................................12, 19

i

*Cotter v. Lyft, Inc.*,
    2017 WL 1033527 (N.D. Cal. Mar. 16, 2017)............................................................................12

*Cruz v. Sky Chefs, Inc.*,
    2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)..........................................................................24

*Custom Led, LLC v. eBay, Inc.*,
    2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) ........................................................................12

*Cuzick v. Zodiac U.S. Seat Shells, LLC*,
    2017 WL 4536255 (N.D. Cal. Oct. 11, 2017)....................................................................20, 21

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2013) ..................................................................................................23

*Eddings v. DS Services of America, Inc.*,
    2016 WL 3390477 (N.D. Cal. May 20, 2016) ........................................................................13

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ..................................................................................................12

*Fischel v. Equitable Life Assurance Society of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ..................................................................................................23

*Ford v. Alfaro*,
    785 F.2d 835 (9th Cir. 1986) ..................................................................................................17

*Fronda v. Staffmark Holdings, Inc.*,
    2018 WL 2463103 (N.D. Cal. June 1, 2018)..........................................................................20

*Galeener v. Source Refrigeration & HVAC, Inc.*,
    2015 WL 12976106 (N.D. Cal. Aug. 20, 2015) .....................................................................22

*Galeener v. Source Refrigeration & HVAC, Inc.*,
    2015 WL 12977077 (N.D. Cal., Aug. 21, 2015) ....................................................................22

*Guilbaud v. Sprint Nextel Corp.*,
    2016 WL 7826649 (N.D. Cal., Apr. 15, 2016) ......................................................................22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................................12, 22

*Harris v. Vector Marketing Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................................................19, 20

*Hunt v. VEP Healthcare, Inc.*,
    2017 WL 3608297 (N.D. Cal. Aug. 22, 2017) .......................................................................12

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011) ..................................................................................................21

ii

*In re Heritage Bond Litigation*,
546 F.3d 667 (9th Cir. 2009) ............................................................. 12

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................. 20

*In re Syncor ERISA Litigation*,
516 F.3d 1095 (9th Cir. 2008) ........................................................... 17

*In re Wells Fargo Loan Processor Overtime Pay Litigation*,
2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ..................................... 14

*Ino v. Gap, Inc.*,
2014 WL 12776370 (N.D. Cal. July 28, 2014) ................................... 14

*Integrity Staffing Solutions, Inc. v. Busk*,
135 S.Ct. 513 (2014) ........................................................................... 14

*Johnson v. Quantum Learning Network, Inc.*,
2017 WL 747462 (N.D. Cal. Feb. 27, 2017) ...................................... 22

*Jimenez v. Allstate Insurance Co.*,
765 F.3d 1161 (9th Cir. 2014) ........................................................... 13

*Kakani v. Oracle Corp.*,
2007 WL 1793774 (N.D. Cal. June 19, 2007) ................................... 19

*Laguna v. Coverall North America, Inc.*,
753 F.3d 918 (9th Cir. 2014) ............................................................. 21

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir.1998) ............................................................ 18

*Lynn's Food Stores, Inc. v. U.S.*,
679 F.2d 1350 (11th Cir. 1982) ......................................................... 25

*Ma v. Covidian Holding, Inc.*,
2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...................................... 21

*Martin v. Applied Data System*,
972 F.2d 1340 (9th Cir. 1992) ........................................................... 17

*McCowen v. Trimac Transportation Services, Inc.*,
311 F.R.D. 579 (N.D. Cal. Dec. 23, 2015) ........................................... 8

*Mitchell v. Corelogic, Inc.*,
2018 WL 6118444 (C.D. Cal. Aug. 7, 2018) ....................................... 7

*O'Connor v. Uber, Inc.*,
201 F. Supp. 3d 1110 (N.D. Cal. Aug. 18, 2016) .............................. 24

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

*O'Sullivan v. AMN Services, Inc.*,
    Case No. 12-cv-2125 (N.D. Cal. 2014) .............................................. 20

*Officers for Justice v. Civil Service Commission of SF*,
    688 F.2d 615 (9th Cir. 1982) ................................................ 12, 17, 20

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*,
    Case No. 13-cv-00672 (E.D. Cal. June 9, 2015) .......................... 20, 21

*Paul, Johnon, Aliston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ................................................... 22

*Richardson v. Interstate Hotels & Resorts, Inc.*,
    2018 WL 1258192 (N.D. Cal., Mar. 12, 2018) ....................... 13, 14, 15

*Richardson v. Interstate Hotels & Resorts, Inc.*,
    2019 WL 803746 (N.D. Cal., Feb. 21, 2019) ......................... 13, 14, 20

*Richie v. Blue Shield of California*,
    2014 WL 6982943 (N.D. Cal. 2014) .......................................... 16

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................... 18

*Ross v. U.S. Bank National Association*,
    2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ............................ 21

*Rutti v. Lojack Corp., Inc.*,
    596 F.3d 1046 (9th Cir 2010) .................................................. 14

*Rutti v. Lojack Corp.*,
    2012 WL 3151077 (C.D. Cal. July 31, 2012) ............................. 21

*Sarinana v. DS Waters of America, Inc.*,
    2014 WL 12770237 (June 9, 2014) .......................................... 11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................... 21

*Tijero v. Aaron Brothers, Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013) ............................................. 20

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F.Supp.2d 1114 (E.D. Cal. 2009) ...................................... 19

*Vazquez v. USM Inc.*,
    2016 WL 612906 (N.D. Cal. Feb. 16, 2016) .............................. 24

*Viceral v. Mistras Group, Inc.*,
    2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ............................ 24

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

*Viceral v. Mistras Group, Inc.*,
    2017 WL 661352 (N.D. Cal. Feb. 17, 2017) .................................................. 24

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................... 21

*Willner v. Manpower Inc.*,
    35 F. Supp. 3d 1116 (N.D. Cal. 2014) ....................................................... 16

*Willner v. Manpower Inc.*,
    2015 WL 3863625 (N.D. Cal. June 22, 2015) ........................................... 18

*Wilson v. TE Connectivity Networks, Inc.*,
    2017 WL 1758048 (N.D. Cal. Feb. 9, 2017) ............................................. 15

**State Cases**

*Armenta v. Osmose, Inc.*,
    135 Cal. App. 4th 314 (2005) .................................................................... 16

*Bell v. Farmers Insurance Exchange*,
    135 Cal. App. 4th 1138 (2006) ............................................................. 16, 17

*Koval v. Pac. Bell Tel. Co.*,
    232 Cal. App. 4th 1050 (2014) .................................................................. 15

*Marin v. Costco Wholesale Corp.*,
    169 Cal.App.4th 804 (2008) ...................................................................... 16

*Nordstrom Commission Cases*,
    186 Cal. App. 4th 576 (2010) .................................................................... 24

*Pineda v. Bank of America, N.A.*,
    50 Cal. App. 4th 1389 (2010) .................................................................... 17

*Serrano v. Aerotek, Inc.*,
    21 Cal. App. 5th 772 (2018) ...................................................................... 15

*Troester v. Starbucks Corp.*,
    5 Cal. 5th 829 (2018) ................................................................................ 14

**Federal Statutes, Rules and Regulations**

29 C.F.R. § 790.8 ................................................................................................ 14

29 U.S.C. § 255 .................................................................................................. 16

29 U.S.C. § 260 .................................................................................................. 16

29 U.S.C. § 216(b) .............................................................................................. 25

Federal Rule of Civil Procedure 23 .................................................................... 12

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

Federal Rule of Civil Procedure 30 ..........................................................................................17

**State Statutes and Regulations**

California Business & Professions Code § 17200 ...........................................................................3

California Civil Code § 3289 ....................................................................................................17

California Labor Code § 203 ...............................................................................................16, 17

California Labor Code § 218.6 ..................................................................................................17

California Labor Code § 226 ...............................................................................................16, 17

California Labor Code § 2699 ...................................................................................................

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs seek approval of an Amended Settlement to resolve their wage and hour class, collective, and representative action. The Amended Settlement provides transformative injunctive relief, as well as increased compensation to a greater number of low-wage workers, for a larger number of workweeks, based on a narrower release of claims for FLSA Collective Members, than the parties' initial settlement, which this Court previously declined to approve. (*See* ECF 64, 65 & 68). The material differences between the Amended Settlement and the initial settlement agreement are as follows:

|  | Amended Settlement | Initial Settlement Agreement |
|---|---|---|
| Settlement Fund | $2,948,867 (Exh. 1, ¶¶ 1.25, 1.26, 2.8) | $1,700,000 (ECF 65-1, ¶ 1.25) |
| Net Settlement Fund | $2,419,367 (Exh. 1, ¶ 1.26) | $1,170,500 (ECF 65-1, ¶ 1.26) |
| Class Size | 1,072 (Exh. 1, ¶¶ 1.25, 3.1) | 618 (ECF 65-1, ¶ 3.1) |
| Workweeks | 92,757 (Exh. 1, ¶ 1.25) | 57,089 (ECF 65-1, ¶ 1.25) |
| Gross Avg. Distrib. | $2,750.81 (Terp Decl. ¶ 16) | $2,750.81 (ECF 65, ¶ 17) |
| Net Avg. Distrib. | **$2,256.87** (Terp Decl. ¶ 16) | **$1,894.01** (ECF 65, ¶ 17) |
| FLSA Collective Member Release | FLSA Collective Member who opts-in or cashes settlement check releases only FLSA claims (and California state law claims covered by the Amended Settlement). (Exh. 1, ¶1.33; Exh. B, p. 2 ["You do not release state wage and hour claims unless you are or were employed in California."]) | FLSA Collective Member who opted-in or cashed settlement check released claims in state where FLSA Collective Member worked, in addition to FLSA claims. (ECF 65-1, ¶1.33) |
| California Class Member Release | California Class Members release all claims covered by the Amended Settlement if they do not exclude themselves from the Amended Settlement. (Exh. 1, ¶1.33) | Ambiguity over whether California Class Members released FLSA claims unless they cashed their settlement checks. (ECF 65-1) |
| Escalation Clause | The Amended Settlement is for a defined group of individuals for pre-defined periods of time. (Exh. 1, ¶1.25) | The Settlement Class was subject to change, with an Escalation Clause if the class were to increase in scope. (ECF 65-1, ¶1.25) |

1

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

In addition to the non-reversionary Settlement Fund of $2,948,867 and valuable injunctive relief, the Amended Settlement also requires the employer to pay its share of payroll taxes. (Exh. 1, ¶¶ 1.25, 3.16). With this deal, 1,072 individuals will receive an average of $2,751 gross, and $2,256.87 net, years sooner than if the matter is litigated to conclusion. (*Id.* at ¶ 1.25; Terp Decl. ¶16)

If this case had failed to settle, Plaintiffs would have had to take and defend many more depositions, win class and maintain class and collective action certification through trial, survive Defendants' potential motions for summary judgment and decertification, and prevail at trial and on any appeals – risky and expensive propositions that would have, at a minimum, greatly delayed and potentially diluted recovery for the class and collective action members. (Terp Decl. ¶ 12).

The proposed Amended Settlement was reached after substantial investigation and discovery. The Amended Settlement is the product of arms'-length negotiations, which included a day-long mediation with top wage-and-hour mediator, Mark Rudy, Esq., and many months of additional negotiations focused on defining meaningful injunctive relief terms, the proper scope of financial recovery for the expanded class, and analyzing formal and informal discovery exchanged between the parties. (*Id.* ¶ 12).

At the preliminary approval hearing for the initial settlement, the Court expressed the concern that FLSA Collective Action Members outside California were releasing state law claims. (Terp Decl., Exh. 2, 16:22-18:6). The proposed Amended Settlement and Collective Action Notice now clarify that FLSA Collective Action Members do not release equivalent wage and hour state claims (beyond California law claims, which are being compensated). (*See* Exh. 1, ¶1.33, Exhibits A & B to Exh. 1).

Defendants are adamant that they have not violated any wage laws, and plan to submit a separate brief on point, illustrating Plaintiffs' substantial litigation risks. Nonetheless, have stipulated to take significant remedial measures to ensure future compliance with California and federal wage and hour laws. (Exh. 1, ¶3.16). In sum, the Amended Settlement is fair, reasonable, and adequate, representing a significant recovery based on the claims in the case for former, current and future employees.

Plaintiffs, therefore, request the Court preliminarily approve the Amended Settlement (Exh. 1), certify the proposed California Class, appoint Class Counsel and Class Representatives to represent the settlement classes, and approve the Notice (Exhs. A & B to Exh. 1). A Proposed Order is attached to the Terp Declaration as Exhibit D to Exhibit 1.

2

## II.    RELEVANT PROCEDURAL BACKGROUND

### A.    Procedural History Prior to Initial Preliminary Approval Hearing

This case was filed on May 22, 2018 and removed to federal court in June 2018. (ECF 1). Plaintiffs' Third Amended Complaint, filed on January 21, 2019, alleges federal Fair Labor Standards Act ("FLSA") overtime violations, and under California state law, alleges failure to pay for all hours worked including overtime, failure to authorize and permit meal and rest periods, failure to provide accurate itemized wage statements, failure to reimburse business expenses, and failure to pay all wages due upon separation. (ECF 55, Third Amended Complaint). Plaintiffs further allege that Defendants violated Business & Professions Code section 17200, and the Private Attorneys General Act of 2004 ("PAGA"). (*Id.*) Defendants deny Plaintiffs' claims. (ECF 72; Exh. 1, ¶¶2.5, 3.23).

Plaintiffs' unopposed motion for preliminary approval of the initial settlement describes the procedural history of this case through February 22, 2019, which includes conditional certification of the FLSA collective as well as a daylong mediation with renowned mediator, Mark Rudy, which resulted in an initial settlement. (ECF 64, pp. 12:19-13:19 of 35). At a hearing on March 14, 2019, the Court denied Plaintiffs' motion for preliminary approval of the initial settlement. (ECF 68).

At the hearing, the Court expressed substantive and procedural concerns about the initial settlement. (Terp Decl., Exh. 2, Transcript, p. 3:9-13). The Court observed "that given [Defendants' appointment] scheduling practices, the allegations people didn't get their meal breaks, and that people didn't get paid overtime are especially strong," at least based on the record before the Court. (*Id.* at p. 4:8-15). Highlighting some of the risks of proceeding absent a settlement, Plaintiffs' counsel pointed to Plaintiffs Cotton's and Rueda's testimony regarding the non-uniformity of lunch break scheduling across locations. (*Id.* at pp. 5:21-6:14, 6:25-7:1, 10:20-11:16, and 11:23; ECF 64, p. 16:11-17 of 35. *See also, e.g.,* ECF 65, ¶ 11; ECF 65-5, Rueda Depo. Tr. 149:19-24; ECF 65 ¶ 10; ECF 65-4, Cotton Depo. Tr. 138:12-16, 172:22-173:2).

The Court also expressed concern that the initial settlement valued California Class Members' workweeks at twice the amount allotted to FLSA Collective Members' workweeks, given the scope of the FLSA release which provided that participating FLSA Collective Members would release not only

FLSA claims, but also potentially more valuable state law claims in states outside of California where they worked for Defendants. (Terp Decl. Exh. 2, pp. 14:25-15:2, 16:2-5, 17:7-10, 18:17-23).

### B.     Procedural History After the Initial Preliminary Approval Hearing

After the Court denied preliminary approval of the settlement, formal discovery resumed. Defendants provided initial written objections and responses to Plaintiffs' requests for documents, interrogatories, and admissions. (Terp Decl.  ¶ 2). The parties are meeting and conferring regarding the adequacy of Defendants' responses and production. (*Id.*) Defendants propounded written discovery responses upon named Plaintiffs and Plaintiffs responded. (*Id.* ¶ 9 ). Plaintiffs provide further detail about the case status in the Terp Declaration.

The parties engaged in more than four months of additional settlement negotiations, too, before signing the instant, proposed Amended Settlement. (Terp Decl.  ¶ 10).

## III.     FACTUAL BACKGROUND

Defendants employ Enrollment Agents to administer and sell identity-related products and services including TSA Pre✓® and TWIC® (Transportation Worker Identification Credential), digital fingerprinting, and passport photos at its enrollment centers, located in a majority of states nationwide. (ECF 32, pdf p. 9:15-21, n.3; ECF 65-2, Deposition of 30(b)(6) Designee Lindsay Savarino ("30b6 Depo. Vol. I,") pp. 22:25-23:4, 28:7-11). Defendants classify Enrollment Agents as non-exempt workers and pay them hourly wages. (ECF 32, pdf p. 10:10-11).

### A.     Off-the-Clock and Overtime Claims

Plaintiffs contend that in California and nationwide, Defendants' scheduling practices caused Enrollment Agents to work off-the-clock before and after their shifts, as well as during their uncompensated lunch periods, in order to complete job duties. (ECF 61, ¶¶ 18-19, 21, 24-2; ECF 32, pdf pp. 10:12-13:4 of 22). Plaintiffs claim that some of the scheduling practices that have led to off-the-clock work include: prescheduling one or more customer enrollment appointments every ten minutes throughout shifts; requiring Enrollment Agents to serve all pre-scheduled appointments; requiring Enrollment Agents to accept all walk-in appointments; requiring Enrollment Agents to spend time upselling each customer on other products; assigning Enrollment Agents to perform start-of-day and end-of-day job duties – such as powering up computers, printing out daily schedules, and then powering down

1    for the day; and, requiring Enrollment Agents to complete periodic training modules by fixed deadlines.

2    (ECF 32, pdf pp. 9:14-11:16 of 22). Overtime estimates among dozens of putative class and collective

3    action members surveyed generally fell between 10 and 30 minutes per day. (*E.g.*, Terp Decl. ¶ 20).

4        Plaintiffs' off-the-clock claims were bolstered by Defendants' training materials and practices

5    which instruct that Enrollment Agents should arrive fifteen to thirty minutes early to perform their "start

6    of day procedures" (ECF 32, pdf p. 11:3-6, n.13, n.14. ECF 32-10 ¶ 10; ECF 65, ¶ 20.b.ii.2; ECF 65-4,

7    Deposition of Jessica Cotton ("Cotton Depo."), pp. 32:4-20, 46:23-47:12, 162:16-163:17, 166:4-19,

8    167:2-168:2) and testimony from Defendants' Fed. R. Civ. P. 30(b)(6) deponent that Enrollment Agents

9    were expected to see all customers with pre-scheduled appointments. (ECF 65-3, Deposition of 30(b)(6)

10   Designee Jonathan Blake Moore ("30b6 Depo. Vol. II"), p. 111:12-15).

11       Enrollment Agents have historically been expected to self-report their hours at least once a week

12   into Defendants' timekeeping system. (ECF 32, pdf p. 10:10 of 22, n.10). Enrollment Agents reported

13   that their managers encouraged them to come to their shifts early (*id.*, pdf p. 11:6-11 of 22, n.16),

14   discouraged them from reporting any overtime or hours outside of their prescheduled shifts (*id.*, pdf pp.

15   4:3-4 of 22, n. 13; *id.* ¶ 20.b.ii.2), and that some managers went so far as to erase the overtime Enrollment

16   Agents had reported. (*Id.*, pdf p. 12:12-13:4 of 22, n.25-n.27).

17       Defendants argue that the companies have compliant policies, including a policy to "pay overtime

18   for all time actually worked." (*E.g.*, ECF 32-1, Exh. K, 2018 Employee Handbook, North America,

19   "Overtime Pay" policy). Defendants also argue that to the extent any Enrollment Agents worked off-the-

20   clock, the practice varied by Enrollment Agent, supervisor, and location, such that the claims could not

21   be tied to any single, uniform policy to deter Enrollment Agents from reporting all hours worked. (*E.g.*

22   ECF 22 pdf pp. 4:21-5:3 of 22; ECF 65-3, 30b6 Depo. Vol. II, p. 111:16-25 (different contracts in place

23   at different locations provide different policies about whether Enrollment Agents must see walk-in

24   customers)). They also argue that managers were usually off site, and lacked knowledge that Enrollment

25   Agents were working off the clock. (Terp Decl., Exh. 2, p. 7:7-12).

26       Defendants point to payroll records showing overtime paid to Class Members during the relevant

27   period, and capacity utilization data showing appointments slots frequently went unfilled, were cancelled,

28   or were subject to client no-shows. (Terp Decl. ¶ 9; Terp Decl. Exh. 4, Paystubs showing overtime paid

to Plaintiffs Cotton and Rueda). Defendants have shared with Plaintiffs declarations from putative class members who say they recorded and were compensated for all time worked. Defendants' assertion that not all Enrollment Agents actually arrive early to perform pre-shift work is supported by the testimony of named-Plaintiff Rueda about a coworker, DaRaya Robinson. (ECF 65-5, Deposition of Connie Rueda ("Rueda Depo.") p. 225:9-20). Plaintiffs Cotton and Rueda acknowledged that they neither reported nor complained about the uncompensated pre-shift work the performed. (Terp Decl. Exh. 5, Additional Excerpts of Deposition Testimony of Jessica Cotton ("Add'l Cotton Depo. Excerpts"), 219:18-220:8, 220:19-24; *id.*, Exh. 6, Additional Excerpts of Deposition Testimony of Connie Rueda ("Add'l Rueda Depo. Excerpts"), 85:15-86:18, 88:1-12).

Finally, Defendants argue as to Enrollment Agents working in California that any damages have been cut off, because Defendant Idemia recently transitioned from a self-reporting system to an ADP timekeeping system, which allows Enrollment Agents to clock in and out accurately. (Exh. 1, ¶ 3.16.1). Defendant has agreed to adopt a similar system nationwide by the end of 2019. (*Id.*, ¶¶3.16.6, 3.16.7).

If the matter has to proceed in litigation, rather than obtaining this favorable settlement, Plaintiffs will seek to produce credible damages estimates for Enrollment Agents based, in part, on a time-stamped, dual-authorization security system that reflects hours worked in excess of what Enrollment Agents self-reported. (*See* ECF 65-3, 30b6 Depo. Vol. II, pp. 25:1-26:11). However, not all Enrollment Agents used those measures during their shift, *e.g.*, when performing a customer greeter role. (*See, e.g., id.*, p. 25:7-14). Defendants argue that the absence of log-in/log-out data for some individuals during some shifts makes it impossible to determine damages on a class-wide basis. (*E.g., id.*).

## B.     Regular Rate of Pay

At designated locations in California and nationwide, Enrollment Agents were required to engage in upselling activities for which they could earn commissions. (ECF 32, pdf p. 10:2-4 of 22, n.5, n.6). Plaintiffs maintain that Defendants failed to pay overtime hours that were reported based on a regular rate of pay that factored in commission pay. (ECF 32, pdf p. 10:3-4 of 22, n.6, 13:5-11 of 22, n. 28, n. 29). Indeed, Defendants' Counsel conceded to this failure in Court. (ECF 65-2, Tr. p. 14:2-11). Unfortunately, the scope and duration of the violation is smaller than Plaintiffs expected upon filing the lawsuit – with very low damages. (Terp Decl. ¶¶ 2, 20). In 2019, Defendant Idemia revised or will revise

6

its pay practices to incorporate non-discretionary bonuses into the regular rate of pay used for calculating overtime, cutting off the liability and damages period for this claim. (Exh. 1, ¶¶3.16.2, 3.16.7). Regardless, Defendants would argue that the commissions constituted bonuses, not part of the regular rate of pay. *See, e.g., Marin v. Costco Wholesale Corp.*, 169 Cal.App.4th 804 (2008) (judgment for defendant on regular rate/bonus claims under California and federal law); *Mitchell v. Corelogic, Inc.*, 2018 WL 6118444 (C.D. Cal. Aug. 7, 2018) (bonus incentive compensation scheme did not violate state or federal overtime law regarding regular rate of overtime pay, on its face).

### C.    Meal and Rest Breaks

Plaintiffs allege Defendants' scheduling practices, described in Section III.A, *supra*, have caused Enrollment Agents to miss rest breaks and, in some cases, meal breaks. This claim is bolstered by the absence of statewide written policies or trainings materials for California Enrollment Agents on how to take such breaks, or how to report missed breaks. (ECF 65-2, 30b6 Depo. Vol. I, p. 18:15-22). Defendants' Rule 30(b)(6) deponent testified she had no knowledge of Defendants ever paying a missed rest break premium for a California Enrollment Agent. (*Id.*, p. 63:9-12).

On the other hand, Defendants argue that trainings and break schedules were provided (Terp Decl. Exh. 3, supervisor emails re: break schedules; Exh. 5, Add'l Cotton Depo. Excerpts, 88:10-89:13; *Id.*, Exh. 6, Add'l Rueda Depo. Excerpts, 185:12-186:7), and that the practices for providing breaks varied by location, time period, and supervisor, such that the issue is not appropriate for class treatment (*e.g.*, ECF 65-2, 30b6 Depo. Vol. I, pp. 18:15-19:20 (Defendants expect each manager to follow state laws)). Defendants produced a dozen employee declarations describing a variety of lunch break practices; for example, some locations close for an hour mid-day for lunch, others for a half hour, others do not close and require employees to rotate out for breaks, while others are single-staffed. (*Id.*)

Plaintiffs' testimony could be used for Defendants to argue against class certification, asserting the diversity of lunch breaks among locations. For example, Plaintiffs Cotton and Rueda both testified they regularly took hour-long lunch breaks while assigned to work at Defendants' Enrollment Center in the City of Alameda, and received at least thirty minutes for lunch at various locations; however, Plaintiff Cotton regularly missed lunch breaks when she worked in Oakland. (*E.g.*, Terp Decl. Exh. 5, Add'l Cotton Depo. Excerpts, 87:6-88:7; ECF 65-4, Cotton Depo. 89:15-23, 138:12-16, 172:22-173:2; ECF 32-

7

1, ¶ 11; ECF 65-5, Rueda Depo. 149:19-24; Terp Decl. Exh. 3 (emails) and Exh. 6, Add'l Rueda Depo. Excerpts, 150:12-16).

Defendants would also point to capacity utilization data showing that appointments slots frequently went unfilled, cancelled, or were subject to client no-shows, allowing ample time for unencumbered breaks. Defendants thus dispute Plaintiffs' allegations that Class Members were unable to take thirty-minute meal breaks and ten-minute rest breaks.

Further, in 2019, Defendant Idemia adopted a new timekeeping system in California, which automatically adds a meal break premium when an employee does not clock out for at least a thirty-minute unpaid meal break that started before the end of the fifth hour of work. (Exh. 1, ¶ 3.16.1) By this settlement, Defendant Idemia commits to taking additional steps to ensure missed meal breaks are reported and paid nationwide. (*Id.*, ¶¶3.16.5, 3.16.6).

### D.    Cell Phone Reimbursement

Enrollment Agents complained of having to use their personal cell phones to make troubleshooting calls during customer enrollment appointments, to receive calls and text-messages from their off-site supervisors, or complete training modules. (ECF 32-11 ¶ 20; ECF 32-1 ¶ 15; ECF 65-4, Cotton Depo. p. 76:3-24). Defendants argue that many enrollment centers have a company phone, which Enrollment Agents could utilize during their shifts. (*See* ECF 32-11 ¶ 20). In response to this lawsuit, in 2019, Defendant revised its reimbursement policy to expressly provide for reimbursement for personal cell phone use for work-related purposes when the California Labor Code would require reimbursement for such purposes. (Exh. 1, ¶3.16.4).

### E.    Derivative Claims

The remaining claims, related to itemized wage statements, timely pay, unfair competition, and penalties are derivative of the above claims. *See, e.g., McCowen v. Trimac Transp. Servs., Inc.*, 311 F.R.D. 579, 586 (N.D. Cal. Dec. 23, 2015) (Seeborg, J.) (treating such claims as derivative).

## IV.    THE PROPOSED SETTLEMENT TERMS AND FACTORS IN THE PARTIES' DECISION TO SETTLE.

### A.    The Class Definitions

The proposed settlement encompasses the "California Class" and the "FLSA Collective" (Exh. 1, ¶¶1.7, 1.8, 1.9).

8

Paragraph 1.8 defines the "California Class" or "California Class Members" as:

all persons who are or who have been employed by one or more of the Defendants as Enrollment Agent Is, Enrollment Agent IIs, Lead Enrollment Agents, and Mobile Enrollment Agents, and similarly situated employees ("Enrollment Agents") in the State of California from May 22, 2014 through June 24, 2019.

Paragraph 1.9 defines the "FLSA Collective" or "FLSA Collective Members" as:

all persons who are or who have been employed by one or more of the Defendants as Enrollment Agent Is, Enrollment Agent IIs, Lead Enrollment Agents, and Mobile Enrollment Agents, and similarly situated employees ("Enrollment Agents") outside the State of California, from May 22, 2015 through May 3, 2019.

The parties settle all claims alleged or which could have been alleged by Enrollment Agents based on the same facts alleged in the Third Amended Complaint, including but not limited to federal and California wage claims, but excluding state claims outside of California. (Exh. 1, 1.33).

## B.    Settlement Terms

The proposed Amended Settlement settles the claims of an estimated 1,072 Class Members for $2,948,867, not including the employer's share of payroll taxes. (Exh. 1, ¶¶ 1.25, 2.8, 3.11). The Settlement Fund shall be distributed among:

1.  1,072 enrollment agents (*id.*, ¶¶ 1.6, 1.7, 1.25, 3.1), resulting in a gross recovery of $2,751 each (Terp Decl. ¶ 16);
2.  Attorney fees, not to exceed $425,000 from the Settlement Fund (Exh. 1, ¶¶ 1.4, 3.14);[2]
3.  Attorneys' litigation costs, estimated not to exceed $20,000 (*id.*, ¶ 3.14; Terp Decl. ¶ 27);
4.  Settlement Administration costs, not to exceed $20,000, to be paid to Rust Consulting (Exh. 1, ¶¶ 1.39, 3.18; Terp Decl. ¶ 26);
5.  Enhancement Awards, not to exceed $27,000 total – $7,500 for named-Plaintiffs Rueda and Cotton, $4,000 for named-Plaintiff Spencer, and $1,000 for the eight opt-in Plaintiffs who provided declarations in support of conditional certification (Exh. 1, ¶ 3.13);
6.  PAGA Allocations of $50,000 total, with $37,500 to be distributed to California's Labor Workforce Development Agency ("LWDA") (*id.*, ¶¶ 1.24, 3.15).

Under no circumstances will money originally designated for class recovery revert to a Defendant. (*Id.* ¶ 1.12.2, 1.37, 3.12.1, 3.13, 3.14, 3.17). As such, the total for distribution will not be less than $2,419,367,

---

[2] The requested attorneys' fees in the initial settlement were also $425,000, that is, 25% (the Ninth Circuit's benchmark, as discussed below) of the $1,700,000. The current fee request of only 14.4% of the settlement fund is made exclusively to maximize recovery to the Class and Collective.

9

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

with an average net recovery of $2,256.87 per class member[3] – a considerable sum for the relatively small off-the-clock, break, and reimbursement claims in this case. (*Id.*, ¶ 1.26; Terp Decl. ¶ 16).

The Amended Settlement also provides injunctive relief aimed at addressing the alleged claims. (Exh. 1, ¶ 3.16). During this litigation, Defendant Idemia adopted a timekeeping system in California that allows Enrollment Agents to clock in and out during their shifts, as opposed to self-reporting their hours, and which automatically credits Enrollment Agents with a missed meal premium when they do not clock out for at least a thirty-minute unpaid meal break that started before the end of the fifth hour of work. (*Id.*) Defendant Idemia has committed to adopt a more precise timekeeping system nationwide and has completed or nearly completed numerous additional policy and training changes that address Plaintiffs' other allegations. (*Id.*) If the Court grants preliminary approval, Defendant Idemia will submit a declaration regarding the completion of the injunctive measures. (*Id.*)

In allocating the settlement fund among class and collective action members, a multiplier of two (2x) will be applied to the workweeks of California Class Members to reflect the additional value of the California law claims, *e.g.,* meal/rest period claims, overtime after eight hours per day, reimbursement claims, wage statement penalties, waiting time penalties, PAGA penalties. (Exh. 1, ¶ 1.14). A second distribution of settlements checks will occur if more than $25,000 in unclaimed funds remain, ninety days after the first round of checks issue. (*Id.*, ¶ 3.12.1). All funds that remain unclaimed by participating California Class Members and FLSA Collective Members at the end of the distribution process will be distributed to *cy pres*. (*Id.*, ¶ 3.12.1). The proposed *cy pres* recipient is the non-profit organization, Legal Aid at Work, a leading provider of free legal services to workers with wage and other employment claims in California. (*Id.*; Terp Decl. ¶ 37).

Plaintiffs seek approval of Rust Consulting as the Settlement Administrator. (Terp Decl. ¶ 27). Rust is a reputable class action administration firm, which submitted a competitive bid relative to two other settlement administration firms, and has provided good service to Plaintiffs' counsel in successfully administering other complex wage-and-hour settlements. (Terp Decl. ¶ 27). If the Court provides

---

[3] Because of the reduced percentage of the fund sought for fees, this average net amount is $362.87 greater than the $1,894 available under the initial settlement.

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

authorization to send notice, the Claims Administrator will mail the Notices to all California Class Members and FLSA Collective Members. (Exh. 1, ¶¶3.6.3, 3.6.4).

The agreed-upon Class Notices describe the litigation, the terms of the Amended Settlement, and the respective options for proposed California Class and FLSA Collective Members to participate in the Amended Settlement. (Exhs A & B to Exh. 1). The Notices provide information regarding the consequences of doing nothing, the final approval hearing, and how to obtain additional information. (*Id.*) Class Members will have the opportunity to contest the workweeks data underlying their allocation estimates, and California Class Members will have an opportunity to object to or opt out of the settlement. (*Id.*) California Class Members who do not timely opt out will be instructed that they will be deemed members of the settlement class, whether or not they cash their settlement checks. (Exh. A, section 17; Exh. 1, ¶¶ 1.42, 3.2, 3.40).

FLSA Collective Members who have previously filed and do not withdraw their consent-to-join forms will receive a settlement check, and may opt-into the case by cashing their settlement checks, which will contain FLSA opt-in and release language on the back of each check. (Exh. 1, 1.41 1.42, 3.2, 3.40); *see, e.g., Sarinana v. DS Waters of Am., Inc.*, 2014 WL 12770237, at *2 (June 9, 2014) (Chen, J.) (supporting this methodology). Plaintiffs will file a declaration from the claims administrator listing the FLSA Collective Members who opted in by cashing checks. (Exh. 1, ¶ 1.41). All California Class Members who do not opt out and all FLSA Collective members who opt in will be subject to the judgment and the Amended Settlement's release of claims. (*Id.* ¶ 1.33; Exh. C to Exh. 1).

## V.    THE COURT SHOULD PRELIMINARILY APPROVE THE AMENDED SETTLEMENT

### A.    The Amended Settlement Satisfies the Rule 23 Requirements for Purposes of Settlement.

Preliminary approval of the proposed settlement is justified because, for settlement purposes, the Amended Settlement meets the requirements of a Rule 23 class action. The class members are numerous – there are more than a thousand, roughly 12% of whom work in California. (Terp Decl. ¶ 22). Plaintiffs are typical of the Class Members and adequate representatives, having served as Enrollment Agents during the relevant time period, alleging each of the California state law claims applies to one or more of them, possessing no conflicts with the Class, and retaining seasoned Class Counsel. Common questions

11

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

of law and fact predominate, such as whether Defendants' appointment scheduling and job duty requirements caused Plaintiffs and the Class to work off-the-clock without receiving proper overtime pay, to miss meal and rest breaks without premium pay, and to be denied reasonable reimbursements for use of employees' personal cell phone plans. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) (discussing Rule 23 elements). (ECF 32 pdf pp. 10:14-13:11). A class action is the superior means of resolution. *See, e.g.*, *Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) (Tigar, J.) (superiority established where class action would achieve resolution of class claims at a lower cost and reduce the likelihood of inconsistent determinations).

### B.    The Amended Settlement Meets the Requirements for Preliminary Approval

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. 23(e). Before a court approves a settlement, it must conclude the settlement is "fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009). Generally, the district court's review of a class action settlement is "limited." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). On preliminary approval, courts review whether the settlement is "within the range reasonable outcomes given the benefits it achieves for [employees] and the risks involved in taking the case to trial." *Cotter v. Lyft, Inc.*, 2017 WL 1033527, *1 (N.D. Cal. Mar. 16, 2017) (Chhabria, J.); *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (Chhabria, J.). The court considers the settlement as a whole, rather than its component parts. *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 630 (9th Cir. 1982)); *Cotter*, 2017 WL 1033527, *1 (settlement need not be "perfect").

In approving a proposed class settlement, this Court considers:

> [1] the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; [2] the amount offered in settlement; [3] the extent of discovery completed and the stage of the proceedings; [4] the experience and views of counsel; [5] the presence of a governmental participant; and [6] the reaction of the class members to the proposed settlement.

*Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1035-1037 (N.D. Cal. 2016) (Chhabria, J.) (quoting *Hanlon*, 150 F.3d at 1026); *Hunt v. VEP Healthcare, Inc.*, 2017 WL 3608297 (N.D. Cal. Aug. 22, 2017)

(Chhabria, J.); *Eddings v. DS Servs. of Am., Inc.*, 2016 WL 3390477 (N.D. Cal. May 20, 2016) (Chhabria, J.). Each of these factors supports approval.

### 1.    The Strength of Plaintiffs' Case and Risks of Continued Litigation

Plaintiffs are confident in the strength of their class claims, but the claims are not without risks.

#### a.    Certification of Off-the-Clock Claims is Uncertain, and Such Claims are Challenging to Prove

Off-the-clock cases of this nature have received Rule 23 certification in recent years. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1163 (9th Cir. 2014) (affirming class certification of off-the-clock claims); *Richardson v. Interstate Hotels & Resorts, Inc.*, 2018 WL 1258192, at *6 (N.D. Cal., Mar. 12, 2018) (Alsup, J.) (certifying off-the-clock overtime claims under Rule 23). However, certification of off-the-clock cases is regularly denied. *See, Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102, 1120-1121 (9th Cir. 2018) (decertifying an FLSA collective action based on off-the-clock claims). While Plaintiffs assert that common policies caused off-the-clock work before and after scheduled shift times, and during meal periods of shifts, there is no guarantee the Court would agree. Defendants will file a separate brief detailing the why they believe Plaintiffs might not succeed in winning class certification.

Even if Plaintiffs certified their off-the-clock claims, Plaintiffs could fail in opposing summary judgment, if Defendants satisfy the Court they lacked the requisite knowledge of violations. *See, e.g., Cleveland Groceryworks.com, LLC*, 200 F. Supp. 3d 924,945 (N.D. Cal. Aug. 4, 2016) (granting defendant's summary judgment motion where plaintiff failed to martial evidence of employers' actual or constructive knowledge of off-the-clock work). For example, Plaintiffs Cotton and Rueda testified that they did not complain to Defendants about their pre-shift off the clock work. *See supra* Section III.A.

If Plaintiffs prevailed on liability, the damages phase would likely require substantial expert costs. (Terp Decl. ¶ 23) While Defendants' dual-authentication security system recorded the time actually worked as compared with the time Enrollment Agents self-reported, some Enrollment Agents worked shifts in capacities that did not require dual authentication. *See supra* Section III.A. The Amended Settlement avoids uncertainty, by allocating money to anyone who may have worked off-the-clock hours in the covered jobs, without requiring each claimant to undergo a difficult process of attempting to document the nature and extent of off-the-clock work. *See, e.g., Richardson v. Interstate Hotels &*

13

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS, CASE NO.: 3:18-cv-03794-VC

*Resorts, Inc.*, 2019 WL 803746, *2 (N.D. Cal. Feb. 21, 2019) (Alsup, J.) (providing final approval to off-the-clock and rest breaks class settlement, noting difficulty of establishing damages); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460, at *6 (N.D. Cal. Aug. 2, 2011) (Chen, J.) (risks related to calculating off-the-clock damages supported settlement approval).

> **b.    The *De Minimis* Doctrine Could Drastically Reduce FLSA Recovery**

FLSA Collective members' recovery could also have been reduced significantly if Defendants were successful in arguing the collective action members' federal overtime claims are *de minimis*. Overtime and off-the-clock claims are based in part on Enrollment Agents' pre-shift and post shift duties, including powering up computers, printing out daily schedules, and then powering down for the day. *See supra* Section III.A. Plaintiffs believe this time should be compensable, and recent California law supports this position. *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018) (holding employer may not require employee to work regularly for non-trivial periods without compensation). However, federal law is less favorable regarding preliminary and post-liminary work. 29 C.F.R. § 790.8(c); *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513 (2014); *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046 (9th Cir 2010) (holding employee's time spent receiving, mapping, and prioritizing jobs and routes for assignment each morning prior to driving to the first job was *de minimis* and should be considered part of the employee's non-compensable commute time); *Ino v. Gap, Inc.*, 2014 WL 12776370, at *1 (N.D. Cal. July 28, 2014) (Chhabria, J.) (dismissing FLSA off-the-clock claims with prejudice based on *de minimis* doctrine, where pre-shift work included retrieving schedules). Here, the Court could have found that the nature of Enrollment Agents' pre-shift work, including powering up machines and printing out schedules to be *de minimus*. Further, Defendant Idemia is implementing systems to capture time worked more accurately going forward, thereby limiting the time period for damages in this case.

> **c.    Certification of Meal and Rest Break Claims is Uncertain**

Substantial uncertainty remains as to whether the break claims would receive Rule 23 certification. Where some attempts to certify break classes have succeeded in recent years, others have failed. *Compare Richardson*, 2018 WL 1258192, at **2-3 (certifying rest break class for hotel attendants who were required to clean a minimum number of rooms per shift); *id.* at **3-4 (denying certification of meal break class).

14

Plaintiffs faced risk on their lunch break claims. Plaintiffs allege Defendants failed to provide training on how to report missed lunch breaks, and failed to pay missed break premiums. However, Defendants will argue they had written policies allowing for half-hour unpaid lunch breaks, and written policies requiring Enrollment Agents to report all hours worked. *See e.g., Serrano v. Aerotek, Inc.*, 21 Cal. App. 5th 772 (2018) (staffing company absolved where it provided a meal break policy to temporary employees, trained them on the policy, and the policy required employees to notify employer if they believed they were prevented from taking breaks); *Wilson v. TE Connectivity Networks, Inc.*, 2017 WL 1758048, at **2, 7-8 (N.D. Cal. Feb. 9, 2017) (LaPorte, M.J.) (denying certification of meal break class where employer provided evidence of formal break policies and supervisor training, even where defendants admitted to never paying a missed meal premium). Further, Defendants would argue that lunch break policies and practices varied by enrollment center, supervisor, and the type of service provided, making it hard to determine liability and damages on a class-wide basis. *See supra* Section III.C. For example, some locations regularly closed for an hour per day at lunchtime, and Plaintiffs acknowledged receiving breaks at certain locations. (*Id.*) Defendants also point to wide variations in volume of actual appointments between sites. (*Id.*) *See Richardson*, 2018 WL 1258192 at **3-4 (denying certification of lunch break class where plaintiff testified she consistently took thirty-minute meal breaks, provided scant evidence of supervisor interruptions, and failed to articulate a viable policy or practice that denied lawful meal breaks). *See also Koval v. Pac. Bell Tel. Co.,* 232 Cal.App.4th 1050, 1057 (2014) (upholding certification denial where supervisors disseminated policies differently, creating variation).

### d.     Commission Pay Violations Appear Limited

Plaintiffs are confident they would obtain summary judgment on Defendants' regular rate of pay violations. *See supra* Section III.B; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment available where there is "no *genuine* issue of *material* fact"). However, the damages for such claim appear too small to justify lengthy and costly litigation, standing alone, and Defendant Idemia has ceased the unlawful practice.

### e.     Cell Phone Use May be Deemed Unnecessary

Plaintiffs argue that Enrollment Agents who worked in California were entitled to reimbursement under California Labor Code section 2802, because personal cell phone use was necessary in performing

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS,
CASE NO.: 3:18-cv-03794-VC

their job duties. Enrollment Agents were required to call Defendants several times during a workday when technical or other issues arose, to respond to supervisor texts and email, and to complete trainings. *See supra* Section III.D. Plaintiffs believe that whether the work-related cell-phone expenses were "necessary" as opposed to merely optional or voluntary is a common question that may be certified. *See, e.g., Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 339 (N.D. Cal. 2018), *modified*, 2018 WL 2197527 (N.D. Cal. May 14, 2018) (Gonzalez Rogers, J.); *Richie v. Blue Shield of California*, 2014 WL 6982943, at *17 (N.D. Cal. 2014) (Chen, J.). However, there is risk Defendants would succeed in arguing such expenses were unnecessary, or unnecessary at every location, as evidence exists that Defendants provided a company phone to some enrollment centers. Further, Defendants are addressed this issue by amending their reimbursement policies. *See supra* Section III.D; Exh. 1, ¶3.16.4.

### f.       Defendant May Have Succeeded in its Good-Faith Defenses

Under FLSA and the California Labor Code, Plaintiffs must prove Defendants' alleged violations were willful for maximum recovery. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (defining FLSA standard for willfulness); *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005) (defining willfulness standard under Labor Code § 203); *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014) (Tigar, J.) (defining standard for a "knowing and intentional" violation under Cal. Lab. Code § 226). Absent settlement, Defendants might have persuaded the trier of fact they lacked the requisite intent, and would have argued for decertification of penalty claims based upon individualized willfulness considerations. *See, e.g., supra* Section III.A (Plaintiffs' testimony that they never complained about pre-shift work). If Plaintiffs were unable to establish the proper intent, the FLSA statute of limitations would reduce to two years. *See* 29 U.S.C. § 255(a). Defendants successfully asserting a good-faith defense would also bar Plaintiffs' class claims under California Labor Code sections 203 and 226 and eliminate the collective's liquidated damages. *See* 29 U.S.C. § 260.

### g.       Plaintiffs May Have Recovered Less in Interest and Penalties

The Parties agree two-thirds of the Amended Settlement payment relates to interest and penalties. (Exhibit 1, ¶ 3.12). This estimate is reasonable because the penalty claims asserted are a significant proportion of the damages estimate and because California's statutory prejudgment interest rate is ten percent and would have begun to accrue as early as May 2014. *See Bell v. Farmers Ins. Exch.*, 135 Cal.

16

NOT. OF MOT. & UNOPPOSED MOT. FOR PRELIM. APPROVAL OF AMENDED CLASS ACTION SETTLEMENT & CERTIFICATION OF SETTLEMENT CLASS, CASE NO.: 3:18-cv-03794-VC

App. 4th 1138, 1150 (2006) (affirming 10% prejudgment interest rate provided by Cal. Civ. Code § 3289 applied to the accrual of unpaid wages under Cal. Lab. Code § 218.6).

Absent the Amended Settlement, Plaintiffs would risk failing to recover interest and penalties, in full or in part. Liquidated damages and prejudgment interest are not *both* awarded after a successful judgment in an FLSA case. *See Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986). The Ninth Circuit has also permitted only partial prejudgment interest. *See Martin v. Applied Data Sys.*, 972 F.2d 1340 (9th Cir. 1992). Defendants asserting a good-faith defense have long argued a court may deny both interest and liquidated damages. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945).

California penalty recoveries are capped and limited by shorter statutes of limitations. *See Pineda v. Bank of Am., N.A.*, 50 Cal. App. 4th 1389, 1398 (2010) (Cal. Lab. Code § 226 = one (1) year, Cal. Lab. Code § 203 = three (3) years); Cal. Lab. Code § 226(e)(1) ($4,000 maximum recovery). The Court should view favorably the Amended Settlement's significant penalty and interest compensation.

### h.    The Risks and Costs of Proceeding, and of Maintaining Class Action Status through Trial, Favor Approval

The uncertain outcome of trial and appeals is a strong incentive for the Parties to settle. The Ninth Circuit has explained, "a strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "'[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution [] especially [] in complex class action litigation . . . .'" *Id.* (quoting *Officers for Justice*, 688 F.2d at 625).

Here, there are significant risks associated with continued litigation. A successful class certification motion may have drawn a Federal Rule of Civil Procedure 23(f) appeal. A decertification motion and resulting appeal could cause further delay. *See Campbell*, 903 F.3d at 1120-1121 (decertifying 14-year old FLSA collective action based on off-the-clock claims). Motion and appellate practice would expend time and resources. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). If Plaintiffs maintained a class and prevailed at trial, post-judgment appeals could follow.

Absent settlement, the Class may not recover for years. This Settlement requests meaningful recovery less than two years after the lawsuit was filed. Defendants will deliver the total Settlement Fund

17

to the third-party administrator within fifteen days of final approval. (Exh. 1, ¶ 3.11.1). Class Members will receive payment by mail without an advance claims process. (*Id.* ¶¶ 3.12, 3.40).

### 2.    The Extent of Discovery Completed and the State of Proceedings

"Courts look to the amount of exchanged information prior to settlement to determine whether the parties have made an informed decision to settle the case." *Willner v. Manpower Inc.*, 2015 WL 3863625, at *4 (N.D. Cal. June 22, 2015) (Tigar, J.); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). As detailed in the undersigned counsel's declarations, the Parties have exchanged written discovery responses, as well as thousands of pages of documents through informal and formal discovery, and have taken two corporate designees' and two named-Plaintiffs' depositions. (ECF 65, ¶ 2, 8-10, 26; Terp Decl. ¶ 25; *see also* Section III, above). This discovery, and an independent investigation including dozens of class member interviews, informed Plaintiffs' decisions about the strengths and weakness of their claims. (*See* Terp Decl. ¶¶ 20, 25; ECF 65 ¶¶ 2, 20, 26).

### 3.    The Experience and Views of Counsel

Plaintiffs' counsel recommends settlement approval. (*See* Schwartz Decl. ¶ 5; Terp Decl. ¶ 15). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (Orrick, J.). Courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d 965.

Plaintiffs and undersigned counsel support the Amended Settlement because it is a strong outcome for the Class. (*See* Schwartz Decl. ¶ 5; Terp Decl. ¶ 15). The Amended Settlement will allow the Parties to avoid further, protracted, costly litigation, and will provide certain significant compensation to the Class Members and injunctive relief going forward. (*See* Schwartz Decl. ¶ 5; Terp Decl. ¶ 15). There is also no reversion to Defendants unless the Amended Settlement fails. (Exh. 1, ¶ 3.17). *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (disfavoring reversionary settlements).

Further, the Amended Settlement addresses concerns raised by the Court when it denied preliminary approval of the initial settlement. Compared to the initial settlement under the Amended Settlement, Enrollment Agents will receive larger allocations, and FLSA Collective Members will waive a narrower range of claims, as discussed above.

18

Counsel also favors this Settlement because the proposed release only requires participating Class Members (other than the named Plaintiffs) to release claims related to the facts and/or causes of action alleged in the complaint (Exh. 1, ¶ 1.33). *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (preliminarily approving settlement in which class members only released claims "based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law."). *Cf. Kakani v. Oracle Corp.,* 2007 WL 1793774, at *3 (N.D. Cal. June 19, 2007) (Alsup, J.) (disapproving settlement with overly-broad release).

### 4. The Presence of a Government Participant

Plaintiffs exhausted their PAGA claim with the LWDA, and the LWDA chose not to intervene or otherwise take any action in this case. (ECF 61-4, pdf p. 2 of 4; Terp Decl. ¶ 40). Nonetheless, the LWDA will receive a significant payment from this Settlement.

### 5. The Reaction of the Class Members to the Proposed Settlement

The Court will be in a better position to gauge Class Members' reaction once they have had an opportunity to respond to the Notice, after the Court preliminarily approves this Settlement.

### 6. The Amount Offered in Settlement

The primary inquiry at preliminary approval is whether the expected recovery absent settlement balances appropriately against the value of the settlement. *See Harris v. Vector Marketing Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (Chen, J.). Courts consider "the factors that ultimately inform final approval," as discussed above. *Id.*; *Cotter*, 193 F.Supp.3d at 1035-1037.

Under the Amended Settlement, Defendants have agreed to make a $2,948,867 guaranteed payment (including a $50,000 PAGA payment) into a Settlement Fund. (Exh. 1 ¶ 1.25). Associated expenses, such as attorneys' fees and costs, incentive awards, settlement administration fee, and PAGA payments to the LWDA, are to be paid out of the Settlement Fund, leaving a $2,419,367 Net Settlement Fund to be distributed among Class Members. (Exh. 1 ¶ 1.26). As described in detail in the Terp Declaration, Plaintiffs estimate that including unpaid wages, premiums, reimbursements, interest, and penalties, Class Members' claims are worth at most $10 million. (Terp Decl. ¶¶ 19, 20, 21). The Settlement Fund represents nearly 30% of that amount, and the Net Settlement Fund represents more than 24% of that amount. (*Id.*) The estimated amount of federal and California state unpaid wages and

19

unreimbursed costs exclusive of interest and penalties is $4,826,659.39, meaning the Amended Settlement represents more than 61% of that amount. (*Id.* ¶ 21). This calculation of potential damages for Defendants' failure to pay all hours worked including overtime, failure to provide meal and rest breaks, reimbursement, and derivative claims is based upon Plaintiffs' analysis of the time and payroll data provided by Defendants as well as information obtained from Plaintiffs and many Class Members. (Terp Decl. ¶¶ 9, 19, 20)

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (Conti, J.).

This Settlement, which provides a net of $2,256.87 per person, on average, compares favorably with other off-the-clock settlements in similar cases. *See, e.g., Richardson*, 2019 WL 803746, *3 (final approval granted for settlement involving average net payments of $2,138.99 to room attendants for certified rest break and off-the-clock claims); *Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, **7-8 (N.D. Cal. June 1, 2018) (James, M.J.) (final approval for settlement providing average gross payment of $1,270 per class member for meal and rest break as well as off-the-clock claims); *Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255, at **1-2 (N.D. Cal. Oct. 11, 2017) (Gilliam, J.) (preliminarily approving $952,000 gross settlement of off-the-clock, and meal and rest break claims, for 1,168 individuals for a gross average recovery of approximately $800 per person); *Tijero v. Aaron Brothers, Inc.*, 301 F.R.D. 314, 319 (N.D. Cal. 2013) (Armstrong, J.) (preliminarily approving $800,000 in settlement involving approximately 269,941 workweeks, or $3.00 gross per workweek, in off the clock and breaks case). The percentage recovery also compares favorably with other approved settlements. *See, e.g., O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (ECF Nos. 84, 92) (N.D. Cal. 2014) (Spero, M.J.) (attached as Exh. 8 to ECF 65, ¶ 23) (approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net average payment) where total exposure before penalties and interest was estimated at $108 million, for a recovery of less than 3% of full relief); *Ogbuehi v. Comcast of*

20

*California/Colorado/Florida/Oregon, Inc.*, Case No. 13:-cv-00672 (E.D. Cal. June 9, 2015) (ECF 30) (*see* ECF 65-7; ECF 65, ¶ 23) (preliminarily approving, for a settlement providing $100,000 gross to be distributed to the 88 class members, for a gross average payment of $1,136.26, constituting 10.5% of the maximum estimated value of the claims); *id.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014); *Ma v. Covidian Holding, Inc.*, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'").

Prospective relief must be considered in evaluating the true value of a settlement. *See, e.g., In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (considering that benefits to the class went beyond the settlement fund); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922-23 (9th Cir. 2014), *depublished on other grounds* (taking injunctive relief into account in assessing settlement value); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ("Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in evaluating a class settlement). Factoring in Defendants' meaningful reforms, as well as Defendants' payment of payroll taxes, this Settlement's recovery warrants approval.

## C.    The Incentive Awards Are Appropriate

Plaintiffs request the Court's approval of incentive payments. Enhancement awards should be evaluated using "'relevant factors, includ[ing] the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the Plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s] of workplace retaliation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

By initiating this lawsuit, the three named Plaintiffs were personally exposed to potential adverse consequences related to current and future employers. *See Rutti v. Lojack Corp.*, 2012 WL 3151077, at **5-6 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives" for employees to participate in class and collective actions"); *Ross v. U.S. Bank Nat'l Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (Illston, J.) (service awards based on "willingness to serve as representatives despite the potential stigma that might attach to them"). Named-Plaintiffs Jessica Cotton and Connie Rueda were current employees when they filed the lawsuit and risked retaliation. (*See* ECF 1, Notice of Removal, pdf. p.1 (orig. compl. filed May 22, 2018); ECF 55 ¶¶ 8-9; ECF 32-1, ¶2; ECF 32-2, ¶ 2). If

21

this motion is granted, named Plaintiffs' final approval motion will discuss their contributions in greater detail; however, they were substantially involved in the litigation, were instrumental in bringing about a settlement that benefits Class Members, and have each agreed to a general release of claims. (*See* Terp Decl. ¶¶28-35; ECF 65, Terp Decl. ISO Initial Settlement, ¶¶ 30-37; Exh. 1 ¶ 3.3).

Under similar facts, this Court has awarded substantial enhancement payments to Class Representatives. *See Buckingham v. Bank of Am., N.A.*, No. 3:15-cv-6344-RGS (N.D. Cal.) (ECF No. 103, at pdf pp. 9:25-26 of 11, filed Jul. 11, 2017) (Seeborg, J.) (approving $15,000 award) (attached as ECF 65-9; *id.* ¶ 39); *Guilbaud v. Sprint Nextel Corp.*, 2016 WL 7826649, at *4 (N.D. Cal., Apr. 15, 2016) (Chhabria, J.) (approving $10,000 awards); *Galeener v. Source Refrig. & HVAC, Inc.*, 2015 WL 12977077, at *2 (N.D. Cal., Aug. 21, 2015) (Chhabria, J.) (approving $25,000 award); *Galeener v. Source Refrig. & HVAC*, 2015 WL 12976106, at *3 (N.D. Cal. Aug. 20, 2015) (same).

The eight opt-in Plaintiffs who provided declarations supporting the successful conditional FLSA certification motion strengthened the class and collective claims by corroborating the allegations in multiple locations around California and elsewhere, thereby increasing Defendants' potential exposure. (Terp Decl. ¶ 37). Their efforts to step forward on behalf of the Class should also be rewarded. *See, e.g., Johnson v. Quantum Learning Network, Inc.*, 2017 WL 747462, at *7 (N.D. Cal. Feb. 27, 2017) (Koh, J.) (approving $1,000 incentive award as reasonable "[when] others did not step forward").

### D.    Attorneys' Fees and Costs are Appropriate

Before final approval, Plaintiffs' Counsel intends to seek approval of attorneys' fees equal to the amount sought under the initial settlement agreement – $425,000, or 14.4% of the Settlement Fund.[4] Courts may award class counsels' fees according to the percentage of the common fund sufficient to provide a reasonable fee. *See Paul, Johnon, Aliston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). This request is far less than the presumptively reasonable 25% benchmark award (*Hanlon*, 150 F.3d 1029; *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. Mar. 20, 2015) (Corley, M.J.)). (Terp Decl. ¶ 24). Counsel also seek a modest $20,000 in costs actually incurred. (*Id.* at ¶ 26).

Here, the prompt result achieved, the substantial awards to Class Members in the face of risks,

---

[4] As noted throughout, the actual settlement value is greater because Defendants will pay their share of the payroll taxes, and have agreed to injunctive relief terms.

the injunctive relief obtained, and the non-reversionary nature of the Amended Settlement, among other things, justify Plaintiffs' Counsel's fee request. Class Counsel will file a fees and costs motion thirty-five days prior to the close of the notice period, to provide Class Members time to review and respond to the motion. (*See* [proposed] Order, Exh. D, to Exh. 1).

An optional lodestar cross-check also supports the fee award. "Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006-1007 (9th Cir. 2002). The undersigned estimates the lodestar will result in a multiplier of less than 1.0, after final approval and administration. (Terp Dec., ¶ 24).

### E.   The Proposed Notice is Sufficient

The proposed California Class Notice and proposed method of distribution are appropriate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Churchill Villiage, LLC. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The language is straightforward. (*See* Exhs A & B to Exh. 1). Notice will be distributed in English, as Defendants avow that the vast majority of Class Members speak and read English (Terp Decl. ¶ 13).

The California Class Notice will provide details about the case, proposed Settlement, and options available, from which California Class Members can make informed decisions about whether to opt out, object, or take no further action and receive a payment from the proposed settlement. (Exh. A to Exh. 1).

The same is true of the notice to FLSA Collective Members. (Exh. B to Exh. 1). As explained therein, FLSA Collective Members would only be bound by the Amended Settlement if they already opted-into the action, or opt-in by choosing to cash their settlement checks. (Exh. 1, ¶ 3.2).

The method of distribution of the Notice is designed to reach the Class Members. The proposed form of notice will be sent via first-class mail to each class member and prior to mailing, the Settlement Administrator shall perform a search on the United States Postal Service's National Change of Address database to review the accuracy and if possible updated Class Member mailing addresses. (Exh. 1, ¶¶ 3.6.3, 3.6.4). Thus, the proposed Notice and distribution plan are adequate.

### F.   The *Cy Pres* Awardee is Appropriate

Plaintiffs' Counsel requests the Court designate Legal Aid at Work ("LAAW") (legalaidatwork.org) as the *cy pres* recipient. (Exh. 1, ¶ 3.12.1). LAAW meets the *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013) test, "that there be a [] nexus between the [] class and the *cy pres*

23

1    beneficiaries." The present case seeks to enforce wage protections, and over 100 Class Members worked

2    in California. (Terp Decl. ¶ 21; ECF 32-1; ECF 32-2; ECF 32-3). LAAW is the leading provider of direct

3    legal services in employment law for low-wage workers in California. (Terp Decl. ¶38). Plaintiffs'

4    Counsel has no financial stake in this designation. (Schwartz Decl. ¶ 6; Terp Decl. ¶ 39; ECF 64-2, ¶ 3).

5        **G.    The PAGA Allocation is Reasonable**

6        At the hearing on Plaintiffs' motion for approval of the initial settlement, the Court stated "I think

7    it's fine for [parties] to allocate a small portion of the settlement to PAGA as long as the overall settlement

8    is appropriate." (Terp Decl., Exh. 2, p. 18:12-14).

9        The Northern District applies a "sliding scale" approach in considering settlements that contain

10    both class and representative PAGA claims, which permits a small award of PAGA penalties for "robust"

11    settlements that "not only vindicate [] rights of [] class members as employees, but may have a deterrent

12    effect upon the defendant [] and other employers." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at

13    *9 (N.D. Cal. Oct. 11, 2016) (Chen, J.); *O'Connor v. Uber, Inc.*, 201 F.Supp.3d 1110, 1134-35 (N.D.

14    Cal. Aug. 18, 2016) (Chen. J.).

15        The Amended Settlement has a strong deterrent effect in the form of injunctive relief. (Exh. 1,

16    3.16). In 2019, Defendant Idemia implemented a more accurate timekeeping system in California, and

17    Defendant Idemia has agreed to adopt changes nationwide by the year's end. (*Id.*)

18        The $50,000 PAGA allocation is 1.7% of the Settlement Fund, and 1.7% of the estimated value

19    of the PAGA claims. (Terp Decl. ¶ 43). This amount is reasonable compared to allocation ratios approved

20    in other class / PAGA hybrid settlements. *See, e.g.*, *Viceral v. Mistras Grp. Inc.*, 2017 WL 661352, at **

21    1, 3 (N.D. Cal. Feb. 17, 2017) (Chen, J.) (approving PAGA penalties worth 0.33% of gross settlement

22    and 0.15% of total estimated value of PAGA claims); *Alexander v. FedEx Ground Pkg. Sys., Inc.*, 2016

23    WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (Chen, J.) (0.7% PAGA allocation); *Vazquez v. USM Inc.*,

24    2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (Donato, J.) (0.67%); *Cruz v. Sky Chefs, Inc.*, 2014

25    WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) ) (Ryu, J.) (0.57%).

26        Where the Class is receiving a substantial percentage of the potential wage and reimbursement

27    recovery, and injunctive relief, the Court should view as reasonable the PAGA allocation. *See also*

28    *Nordstrom Com'n Cases*, 186 Cal.App.4th 576, 589 (2010) (PAGA settlements must be considered in

24

the context of "the overall settlement of the case" and need not allocate any portion of the recovery to PAGA penalties to warrant court approval).

### H.    The Amended Settlement is Also Reasonable Under the FLSA's Review Standard

When an employee brings an action for wages under 29 U.S.C. § 216(b), the parties must present any proposed settlement for approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). If the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," a stipulated judgment is appropriate. *Id*. at 1355. Settlements of FLSA claims are permissible because initiation of the action "provides some assurance of an adversarial context." *Id*. at 1354. Employees are likely to be represented by an attorney who can protect their rights, so "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights." *Id*. If the settlement reflects a reasonable compromise of disputed issues, approval is permissible. *Id*. Here, the FLSA claims are based on low estimates of daily off-the-clock work and miniscule regular rate of pay violations. (Terp Decl. ¶ 20). For the reasons discussed above, this Settlement of FLSA claims is fair.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs request the Court (1) preliminarily approve the Amended Settlement; (2) certify the proposed California Class for settlement purposes only (the FLSA collective was already conditionally certified); (3) name Bryan Schwartz Law as Class Counsel, and Plaintiffs as Class Representatives; (4) name Rust Consulting as Claims Administrator; (5) approve the Notices to be sent to the California Class and FLSA Collective; and (6) schedule a final approval hearing date.

Dated: July 16, 2019                                    BRYAN SCHWARTZ LAW

                                                        By: */s/ Rachel M Terp*_____
                                                        Rachel M. Terp
                                                        *Attorneys for Plaintiffs*