BRYAN SCHWARTZ LAW
BRYAN SCHWARTZ (SBN 209903)
NATASHA BAKER (SBN 319381)
180 Grand Ave., Suite 1380
Oakland, California 94612
Tel: (510) 444-9300
Fax: (510) 444-9301
Email: bryan@bryanschwartzlaw.com
natasha@bryanschwartzlaw.com

*Attorneys for Plaintiffs and FLSA Collective,*
*Putative California Class, and on behalf*
*of the general public*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORINA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Connie Rueda, Jessica Cotton, and Shelia Spencer, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>                Plaintiffs,<br><br>   vs.<br><br>Idemia Identity & Security USA, LLC, MorphoTrust USA, LLC, and Does 1-50,<br><br>            Defendant. | CASE NO.: 3:18-cv-03794-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF AMENDED CLASS ACTION SETTLEMENT**<br><br>Originally filed: May 22, 2018<br>Removal date: June 25, 2018<br>Trial date: None set<br><br>Hearing Date: December 12, 2019<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that a hearing will be held on Plaintiffs' Unopposed Motion for Final Approval of Amended Class Action Settlement on December 12, 2019 at 10:00 a.m., in the Courtroom of Honorable Vince Chhabria, located at 450 Golden Gate Ave., 17th Floor, Courtroom 4, San Francisco, California 94102. At the hearing, representative Plaintiffs Connie Rueda, Jessica Cotton, and Shelia Spencer ("Plaintiffs"), through their attorneys and on behalf of all other Enrollment Agent Is, Enrollment Agent IIs, Mobile Enrollment Agents, and Lead Enrollment Agents (hereinafter "Enrollment Agents") similarly situated, will and hereby do move the Court to: (1) grant final approval of the Parties' amended settlement in the gross amount of $2,948,867, not including the employer's share of payroll taxes; (2) award service payments to the Class Representatives and Declarants; and (3) enter judgment pursuant to Parties' Amended Settlement. The motion will be heard along with Plaintiffs' motion for attorneys' fees and costs (ECF No. 93).

The Court granted preliminary approval of the Amended Settlement between Plaintiffs and Defendants Idemia Identity & Security USA, LLC and MorphoTrust USA, LLC ("Defendants") on August 22, 2019 (ECF No. 91). Support for the Amended Settlement from the Class has been universal. No one has objected to or excluded themselves from the Amended Settlement. The proposed settlement is fair, adequate, and reasonable.

This Motion is based on: this Notice of Motion and Unopposed Motion for Final Approval of Amended Class Action Settlement; the accompanying Memorandum of Points and Authorities; Plaintiffs' Unopposed Motion for Preliminary Approval of Amended Class Action Settlement (ECF No. 83), all declarations filed in support thereof (ECF Nos. 84 through 85-1, 88 through 88-3), and Defendants' statement on non-opposition (ECF No. 87);  the Declaration of Sara Schwermer-Sween (Senior Project Manager of Claims Administrator Rust Consulting, "Rust Decl."); the Declaration of Bryan J. Schwartz, Esq.; any oral argument of counsel; the complete files, records, and pleadings in the above captioned matter; and such additional matters as the Court may consider.

A Proposed Order is submitted herewith.

1  Dated: November 22, 2019                    BRYAN SCHWARTZ LAW

2                                      By: */s/ Bryan J. Schwartz*_____

3                                      Bryan J. Schwartz, Esq.
                                       Natasha T. Baker, Esq.

4
                                       *Attorneys for Plaintiffs and FLSA Collective,*
5                                      *Putative California Class*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT, CASE NO.: 3:18-cv-03794-VC

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION............................................................................................1

II.    PROCEDURAL BACKGROUND ...............................................................2

III.   THE PROPOSED SETTLEMENT IS AN EXCEPTIONAL RESULT, AND THE NOTICE PROCESS WAS ADMINISTERED TO PROVIDE CLASS MEMBERS THE OPPORTUNITY TO MAKE AN INFORMED DECISCION ABOUT PARTICIPATION ........................................................................................................................3

    A.   The Settlement Agreement Provides for Substantial Recovery for Class Members ....................3

    B.   The Notice Process Encompassed Efforts to Reach Every Class Member and Ensure Maximum Opportunity for Class Members to Benefit ..........................................................5

    1.   The Notice Process Fulfilled the Promises Made on Preliminary Approval ................................5

    2.   The Reaction of Class Members Demonstrates Universal Support for the Settlement ................6

    3.   The Parties Provided Notice to the Relevant Government Agencies ...........................................6

IV.   THE COURT SHOULD GRANT FINAL APPROVAL........................................................6

    A.   The Amended Settlement is Fair, Adequate, and Reasonable, Warranting Final Approval and Entry of Judgment..........................................................................................6

    B.   Each Factor Weighs in Favor of Granting Final Approval ..........................................................7

    1.   The Amended Settlement is Non-Collusive and Was the Product of Extensive Negotiations......7

    2.   The Court Should Weigh the Strength of Plaintiffs' Case Against the Risk, Expensive, Complexity and Likely Duration of Further Litigation, and the Risk of Maintianing Class Action Status Though Trial ..............................................................................................8

    3.   The Amount Offered in Settlement Weights Strongly in Favor of Final Approval ....................9

    4.   The Stage of the Proceedings Favors this Settlement ...............................................................11

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS ACTION SETTLEMENT, CASE NO.: 3:18-cv-03794-VC

5.    The Able Class Representation and Class Counsel's Support for the Deal Support Settlement Approval ...................................................................................................................11

6.    The Government's Non-Participation Supports Approval, in Light of the Reasonable PAGA Settlement ...................................................................................................................14

7.    The Amended Settlement is Also Reasonable Under the FLSA's Review Standard .................13

8.    The Positive Reaction of the Class to the Proposed Settlement Strongly Favors Settlement Approval ...................................................................................................................13

9.    All Additional Settlement Terms are Fair....................................................................................14

A.    Representative and Declarant Plaintiffs' Modest Enhancements are Appropriate.....................14

B.    The Requested Cy Pres Beneficiary is Appropriate ....................................................................16

**V.    CONCLUSION ................................................................................................................16**

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT, CASE NO.: 3:18-cv-03794-VC

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. FedEx Ground Package System, Inc.*,
2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ...................................................... 12

*Alila-Katita et al v. U.S. Bank Nat'l Ass'n*,
(N.D. Cal. Jul. 13, 2016) ........................................................................................ 8

*Buckingham v. Bank of America, N.A.*,
Case No. 3:15-cv-6344-RGS (N.D. Cal.) ............................................................ 15

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ............................................................................... 8

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ............................................................................... 8

*Cody v. Hillard*,
88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) ...................................................... 14

*Cotter v. Lyft, Inc.*,
193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................................. 7

*Cruz v. Sky Chefs, Inc.*,
2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ..................................................... 12

*Cuzick v. Zodiac U.S. Seat Shells, LLC*,
2017 WL 4536255 (N.D. Cal. Oct. 11, 2017) ..................................................... 10

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2013) ............................................................................... 16

*Franklin v. Kaypro Corp.*,
884 F.2d 1222, 1229 (9th Cir. 1989) ..................................................................... 6

*Fronda v. Staffmark Holdings, Inc.*,
2018 WL 2463103 (N.D. Cal. June 1, 2018) ....................................................... 10

*Galeener v. Source Refrigeration & HVAC, Inc.*,
2015 WL 12976106 (N.D. Cal. Aug. 20, 2015) ................................................... 16

*Galeener v. Source Refrigeration & HVAC, Inc.*,
2015 WL 12977077 (N.D. Cal., Aug. 21, 2015) .................................................. 16

*Guilbaud v. Sprint Nextel Corp.*,
2016 WL 7826649 (N.D. Cal., Apr. 15, 2016) .............................................. 15, 16

i

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................. 7

*Hopson v. Hanesbrands, Inc.*,
2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ............................................................. 16

*In re Art Materials Antitrust Litig.*,
100 F.R.D. 367, 372 (N.D. Ohio 1983) ................................................................... 14

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ............................................................. 14

*In re Bluetooth Headset Products Liability Litigation*,
654 F.3d 935 (9th Cir. 2011) .................................................................................. 10

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366, 372 (S.D. Ohio 1990) ................................................................... 14

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 10

*In re Syncor ERISA Litigation*,
516 F.3d 1095 (9th Cir. 2008) ................................................................................. 8

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*,
2017 WL 2212780 (N.D. Cal. 2017) ....................................................................... 11

*Johnson v. Quantum Learning Network, Inc.*,
2017 WL 747462 (N.D. Cal. Feb. 27, 2017) ........................................................... 16

*Laguna v. Coverall North America, Inc.*,
753 F.3d 918 (9th Cir. 2014) .................................................................................. 10

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir.1998) ................................................................................. 11

*Lynn's Food Stores, Inc. v. U.S.*,
679 F.2d 1350 (11th Cir. 1982) .............................................................................. 13

*Ma v. Covidian Holding, Inc.*,
2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ........................................................... 10

*Mandujano v. Basic Vegetable Prods., Inc.*,
541 F.2d 832, 837 (9th Cir. 1976) .......................................................................... 14

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) ........................................................... 7

*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523, 528 (C.D. Cal. 2004) .................................................................... 11

ii

*O'Connor v. Uber, Inc.*,
    201 F. Supp. 3d 1110 (N.D. Cal. Aug. 18, 2016) ........................... 13

*O'Sullivan v. AMN Services, Inc.*,
    Case No. 12-cv-2125 (N.D. Cal. 2014) ........................... 10

*Officers for Justice v. Civil Service Commission of SF*,
    688 F.2d 615 (9th Cir. 1982) ........................... 7, 9

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*,
    Case No. 13-cv-00672 (E.D. Cal. June 9, 2015) ........................... 10

*Richardson v. Interstate Hotels & Resorts, Inc.*,
    2019 WL 803746 (N.D. Cal., Feb. 21, 2019) ........................... 10

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................... 9

*Ross v. U.S. Bank National Association*,
    2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ........................... 15

*Rutti v. Lojack Corp.*,
    2012 WL 3151077 (C.D. Cal. July 31, 2012) ........................... 15

*Satchell v. Fed. Exp. Corp.*,
    2007 WL 1114010  (N.D. Cal. Apr. 13, 2007) ........................... 7

*Sarinana v. DS Waters of America, Inc.*,
    2014 WL 12770237 (June 9, 2014) ........................... 5

*Scandoval v. Tharaldson Employee Management, Inc.*,
    2010 WL 2486346 ........................... 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................... 14

*Vazquez v. USM Inc.*,
    2016 WL 612906 (N.D. Cal. Feb. 16, 2016) ........................... 12

*Viceral v. Mistras Group, Inc.*,
    2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ........................... 13

*Viceral v. Mistras Group, Inc.*,
    2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ........................... 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................... 10

*Willner v. Manpower Inc.*,
    2015 WL 3863625 (N.D. Cal. June 22, 2015) ........................... 11

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT, CASE NO.: 3:18-cv-03794-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**State Cases**

*Duran v. U.S. Bank Nat. Assn.*,
    59 Cal.4th 1 (2014) ................................................................................................... 8

*Nordstrom Commission Cases*,
    186 Cal. App. 4th 576 (2010) ................................................................................. 13

**Federal Statutes, Rules and Regulations**

29 U.S.C. § 216(b) ...................................................................................................... 9, 13

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT, CASE NO.: 3:18-cv-03794-VC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On August 22, 2019, this Court granted preliminary approval of the Parties' Amended Settlement agreement, after previously sending the parties back to the negotiating table and denying the original preliminary approval motion. (*See* ECF Nos. 64, 65 & 68). The material differences between the Amended Settlement and the initial settlement agreement were described in detail in Plaintiffs' Motion for Preliminary Approval of Amended Class Action Settlement (ECF No. 83, 12). Since this Court ultimately granted preliminary approval, nothing has occurred to cause the Court to revisit its assessment of the Amended Settlement. Universal support for the Amended Settlement confirms that it is a strong result. The Court should grant final approval now.

This settlement on behalf of the Class and Fair Labor Standards Act Collective Action Members (collectively, "Class Members") is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e). The Amended Settlement provides transformative injunctive relief, as well as substantial compensation to over 1,000 low-wage workers, based on an appropriately tailored release of claims.

In addition to the non-reversionary Settlement Fund of almost $3 million, the Amended Settlement also requires the employer to pay its share of payroll taxes. (ECF No. 84-1, Amended Stipulation of Class Action, Collective Action, and Representative Action Settlement and Release ("Amended Settlement") ¶¶ 1.25, 2.8, 3.11). Specifically, under the Amended Settlement, 1,072 Class Members will receive an average of thousands of dollars each, years sooner than if the matter were litigated to conclusion. (*Id.* at ¶¶ 1.25-1.26; ECF No. 84, Declaration of Rachel Terp in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Amended Settlement ("Terp PAM Decl.") ¶ 16-17).[1] While Defendants are adamant that they never violated any wage laws, Defendants have stipulated to take remedial measures to ensure future compliance with California and federal wage and

---

[1] The Amended Settlement was to provide for 1,072 Class Members but, per Defendant and the settlement administrator, the list was reduced to 1,061 (*i.e.,* increasing the per-person recovery slightly) because the list with 1,072 people included some duplicates, double-counting several employees who worked both inside and outside of California. (Declaration of Bryan J. Schwartz in Support of Final Approval ("Schwartz Decl.") ¶ 6).

hour laws. (Amended Settlement ¶ 3.16). Having received adequate notice as approved by this Court, Class Members responded favorably; none opted out or objected. *See* Rust Decl. ¶ 14-15.

If this case had failed to settle, Plaintiffs would have had to take and defend many more depositions, win class and maintain class and collective action certification through trial, survive Defendants' potential motions for summary judgment and decertification, and prevail at trial and on any appeals – risky and expensive propositions that would have, at a minimum, greatly delayed and potentially diluted recovery for Class Members. (Terp PAM Decl. ¶ 12).

As conveyed to this Court prior to preliminary approval, the Amended Settlement was reached after substantial investigation and discovery. It is the product of arms'-length negotiations, which included a day-long mediation with top wage-and-hour mediator, Mark Rudy, Esq., and many months of additional negotiations focused on defining meaningful injunctive relief terms, the proper scope of financial recovery for the expanded class, and analyzing formal and informal discovery exchanged between the parties. (ECF No. 65 ¶ 3-4, 14; Terp PAM Decl. ¶ 8-10). The re-negotiated Amended Settlement after preliminary approval was initially denied clarified that, with this version, FLSA Collective Action Members do not release wage and hour state claims beyond California law claims, which are being compensated. (*See* Amended Settlement ¶1.33, ECF No. 88-1 through ECF No. 88-2).

Accordingly,  Plaintiffs respectfully request that this Court: (1) grant final approval of the Parties' amended settlement in the gross amount of $2,948,867, not including the employer's share of payroll taxes; (2) award service payments to the Class Representatives and Declarants; and (3) enter judgment pursuant to Parties' Amended Settlement. Plaintiffs' counsel's motion for fees and costs was filed timely on November 14, 2019 (*see* ECF No. 93), and Plaintiffs renew the request for approval of the modest fees and costs sought.

## II.    PROCEDURAL BACKGROUND

Plaintiffs previously described the procedural history of this case through the execution of the Amended Settlement on July 15, 2019. (ECF No. 83, 3-4). Since then, on August 22, 2019, the Court granted Plaintiffs' unopposed motion for preliminary approval of the Amended Settlement in full. (ECF No. 91). On September 25, 2019, the approved class notices went to the Class by U.S. First Class mail. Rust Decl. ¶ 10. For any addresses that were undeliverable, the Settlement Administrator conducted

address tracing, followed by telephone or email contact. Rust Decl. ¶ 11. Ultimately, only 17 of the 1,061[2] (approximately 1.6%) Class Members seem not to have been located, after the extensive efforts of all counsel and the Settlement Administrator. Rust Decl. ¶ 11-12. As noted above, no class member opted out or objected. Rust Decl. ¶ 14-15.

III.    **THE PROPOSED SETTLEMENT IS AN EXCEPTIONAL RESULT, AND THE NOTICE PROCESS WAS ADMINISTERED TO PROVIDE CLASS MEMBERS THE OPPORTUNITY TO MAKE AN INFORMED DECISION ABOUT PARTICIPATION.**

A.    **The Settlement Agreement Provides for Substantial Recovery for Class Members.**

As described previously (Amended Settlement, ¶¶ 1.25, 2.8, 3.11), the $2,948,867 Settlement Fund will be distributed as follows:

1. a gross recovery of $2,779.33 each on average (ECF No. 84 ¶ 16) to the 1,061 enrollment agents having the opportunity to participate (*id.*, ¶¶ 1.6, 1.7, 1.25, 3.1);[3]
2. Class Counsel's attorneys' fees of $425,000 from the Settlement Fund (Amended Settlement, ¶¶ 1.4, 3.14);[4]
3. Class Counsel's litigation costs of $20,000 (*id.*, ¶¶ 3.14; Terp PAM Decl. ¶ 26);
4. Settlement Administration costs of $20,000, to be paid to Rust Consulting (Amended Settlement, ¶¶ 1.39, 3.18; Terp PAM Decl. ¶ 27-28);[5]
5. Enhancement Awards, not to exceed $27,000 total – $7,500 each for named-Plaintiffs Rueda and Cotton, $4,000 for named-Plaintiff Spencer, and $1,000 for the eight opt-in Plaintiffs who provided declarations in support of conditional certification (Amended Settlement, ¶ 3.13);
6. PAGA Allocations of $50,000 total, with $37,500 to be distributed to California's Labor Workforce Development Agency ("LWDA") (*id.*, ¶¶ 1.24, 3.15).

---

[2] *See supra* at 1, explaining adjustment to class member list.
[3] Prior to the adjustment of the class member list to 1,061 class members, the gross recovery was $2,751 per person on average for 1,072 class members. (Terp PAM Decl. ¶16).
[4] As noted in the fee approval motion (ECF No. 93), the fee request amounts to only 14.4% of the settlement fund, to maximize recovery to the Class Members.
[5] Rust is asking the Court for $27,425 because their actual administration fees and costs exceeded the $20,000 originally sought, as explained in the declaration of Sara Schwermer-Sween, filed herewith. (Rust Decl. ¶ 16). The difference between $20,000 and the actual cost would be taken out of funds remaining from uncashed checks before the second distribution or distribution to *cy pres*. Undersigned counsel takes no position on this request.

Under no circumstances will money originally designated for class recovery revert to Defendants. (*Id.* ¶ 1.12.2, 1.37, 3.12.1, 3.13, 3.14, 3.17). As such, assuming Court approval, the total available for distribution will be $2,419,367, for an average net recovery of $2,280.27 per class member[6] – a considerable sum for the relatively small off-the-clock, break, and reimbursement claims in this case. (*Id.*, ¶ 1.26; Terp PAM Decl. ¶ 16-17).

The Amended Settlement also provides injunctive relief aimed at addressing the alleged claims. (Amended Settlement, ¶ 3.16). During this litigation, Defendant Idemia adopted a timekeeping system in California that requires Enrollment Agents to clock in and out during their shifts, as opposed to self-reporting their hours, and which automatically credits Enrollment Agents with a missed meal premium when they do not clock out for at least a thirty-minute unpaid meal break that started before the end of the fifth hour of work. (*Id.*) Defendant Idemia has committed to adopt a more precise timekeeping system nationwide and has completed or nearly completed numerous additional policy and training changes that address Plaintiffs' other allegations. (*Id.*) Defendant Idemia has indicated it will submit a declaration regarding the completion of the injunctive measures along with its non-opposition to this motion. (Schwartz Decl. ¶7)

In allocating the settlement fund among class and collective action members, a multiplier of two (2x) was applied to the workweeks of California Class Members to reflect the additional value of the California law claims, *e.g.,* meal/rest period claims, overtime after eight hours per day, reimbursement claims, wage statement penalties, waiting time penalties, and PAGA penalties. (Amended Settlement, ¶ 1.14). A second distribution of settlements checks will occur if more than $25,000 in unclaimed funds remain, ninety days after the first round of checks issue. (*Id.*, ¶ 3.12.1). All funds that remain unclaimed by participating California Class Members and FLSA Collective Members at the end of the distribution process will be distributed to *cy pres.* (*Id.*, ¶ 3.12.1).[7] The proposed *cy pres* recipient is the non-profit organization, Legal Aid at Work, a leading provider of free legal services to workers with wage and other employment claims in California. (*Id.*; Terp PAM Decl. ¶ 38).

---

[6] Prior to the adjustment of the class member list to 1,061 class members, the net recovery was $2,256.87 per person on average for 1,072 class members. (Terp PAM Decl. ¶16)

[7] This term would be modified if the Court grants Rust Consulting's request for additional administration fees.

FLSA Collective Members who have previously filed and do not withdraw their consent-to-join forms will receive a settlement check, and others outside California will opt-into the case by cashing their settlement checks, which will contain FLSA opt-in and release language on the back of each check. (Amended Settlement, ¶ 1.41 1.42, 3.2, 3.40); *see also, Sarinana v. DS Waters of Am., Inc.*, 2014 WL 12770237, at *2 (June 9, 2014) (Chen, J.) (describing this methodology). All California Class Members who do not opt out and all FLSA Collective members who opt in will be subject to the judgment and the Amended Settlement's release of claims. (Amended Settlement, ¶ 1.33; ECF No. 91).

## B. The Notice Process Encompassed Efforts to Reach Every Class Member and Ensure Maximum Opportunity for Class Members to Benefit.

### 1. The Notice Process Fulfilled the Promises Made on Preliminary Approval.

In accordance with the Court's Order granting preliminary approval of the Amended Settlement Agreement, Rust Consulting executed the notice and administration procedures. (ECF No. 91; Rust Decl. ¶ 3). The approved Class Notice described the litigation, the terms of the Amended Settlement, and the respective options for proposed California Class and FLSA Collective Members to participate (and, in the case of California Class Members, to object) in the Amended Settlement. (Rust Decl. Exh. A). The Notice also stated, on its face, the minimum Settlement payment amount that the recipient would receive if he or she remained in the class and/or collective action. (*Id.*).

On September 25, 2019, Rust mailed the Settlement Notices. (Rust Decl. ¶ 10). The Notices informed each recipient about his or her work-week total and whether work was performed in California or elsewhere. The Notices provided information regarding the consequences of doing nothing, the final approval hearing, and how to obtain additional information, including through a website and phone number specific to the settlement. (*Id.* at ¶ 5-6; Rust Decl. Exh. A).

Of the Notices mailed to the Class Members' most recent known addresses based upon Defendants' records (after running the addresses through the U.S. Postal Service Change of Address system), 57 were initially returned as undeliverable to Rust. (Rust Decl. ¶ 11). Rust was able to locate addresses and resend the Notice for 49 of the 57 individuals, and Rust emailed or called the other 8 individuals. The second mailing resulted in 4 undeliverable notices and the emailing/calling method did not work for 7 of the 8 individuals. Thus, there are 11 undeliverable Notices. (*Id.*). Counsel worked

diligently with Rust to ensure that Class Members and Collective Members were aware of this settlement and had the opportunity to consider the terms of the settlement, and to respond to all Class Members' and Collective Members' inquiries through various media.

### 2. The Reaction of the Class Members Demonstrates Universal Support for the Settlement.

As of this filing, there has not been a single objection or exclusion from the settlement. Rust Decl. ¶ 14-15.[8] The parties established a procedure for Class Members to dispute their award if they believed the data used to calculate their award was erroneous. (Amended Settlement ¶ 1.19, 1.37, 3.7).  In addition, the parties agreed that a portion of the settlement fund would be dedicated to providing additional compensation to class or collective action member(s) who successfully establish that they were underpaid on account of an error in the data provided by Defendants used to calculate their award. (Amended Settlement ¶ 1.37). Only one individual disputed her award, and that claim was granted, resulting in additional compensation to that individual. (Rust Decl. ¶ 13). The entire Class is therefore satisfied with the outcome.

### 3. The Parties Provided Notice to the Relevant Government Agencies.

Undersigned counsel provided notice of the PAGA settlement to the California Labor Workforce Development Agency. (Schwartz Decl. ¶ 4). The Parties received no objection from the  agency. *Id*.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL.
### A. The Amended Settlement is Fair, Adequate, and Reasonable, Warranting Final Approval and Entry of Judgment.

Federal law strongly encourages settlements in the context of class actions. *See, e.g.*, *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits"). When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

---

[8] The last day for Class Members to opt-out is November 25, 2019. Class Counsel will notify the Court of any updates, if any, at the final approval hearing.

concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982).

The Ninth Circuit has identified several other factors to be considered, in addition to the principal inquiry as to the lack of improper collusion: (1) the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; (2) the amount offered in settlement; (3) the extent of discovery completed and the stage of the proceedings; (4) the experience and views of counsel; (5) the presence of a governmental participant; and (6) the reaction of the class members to the proposed settlement. *Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1035-1037 (N.D. Cal. 2016) (Chhabria, J.) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).Here, all of the relevant factors weigh in favor of final approval.

## B.     Each Factor Weighs in Favor of Granting Final Approval.

The Amended Settlement is a strong result in a case where success was uncertain.

### 1.     The Amended Settlement is Non-Collusive and Was the Product of Extensive Negotiations.

The Amended Settlement was the product of arm's-length, hard-fought, non-collusive negotiations, including a full-day mediation with a highly experienced class action mediator and months of additional negotiations on defining meaningful injunctive relief terms, the proper scope of financial recovery for the expanded class, and analyzing formal and informal discovery exchanged between the parties. (Terp PAM Decl. ¶ 10, 25; ECF No. 65 ¶ 3-4, 14); *see also Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 10277179, at *4 (N.D. Cal. Jan. 6, 2012) (granting final approval in consumer class action, noting with approval that "[n]egotiations were overseen by a qualified mediator" with respect to lack of collusion and adequacy of class counsel). When the Court denied preliminary approval of the settlement on March 14, 2019, Plaintiffs' counsel resumed arm's-length, hard-fought negotiations, resulting in the much bigger settlement before the Court now for final approval. The record is clear that the Amended Settlement was non-collusive.

### 2.     The Court Should Weigh the Strength of Plaintiffs' Case Against the Risk,

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Expensive, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Through Trial.**

The uncertain outcome of trial and appeals is a strong incentive for the Parties to settle. The Ninth Circuit has explained, "a strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). This is in part because there are significant risks associated with continued complex class action litigation. A successful class certification motion may have drawn a Federal Rule of Civil Procedure 23(f) appeal. A decertification motion and resulting appeal could cause further delay. *See, e.g., Campbell v. City of Los Angeles*, 903 F.3d 1090, 1120-1121 (9th Cir. 2018) (decertifying 14-year old FLSA collective action based on off-the-clock claims). If Plaintiffs maintained a class and prevailed at trial, post-judgment appeals could follow. *See, e.g., Duran v. U.S. Bank Nat. Assn.*, (2014) 59 Cal.4th 1; *Alila-Katita et al v. U.S. Bank Nat'l Ass'n* (N.D. Cal. Jul. 13, 2016). As such, absent settlement, the Class may not recover for years. This Settlement, on approval, will achieve meaningful recovery less than two years after the lawsuit was filed. Defendants will deliver the total Settlement Fund to the third-party administrator within fifteen days of final approval. (Amended Settlement, ¶ 3.11.1). Class Members will receive payment by mail without any additional advance claims process. (*Id.* ¶¶ 3.12, 3.40).

As described in greater detail in Plaintiffs' Motion for Preliminary Approval of the Amended Settlement (ECF No. 83 at 24-29) and Defendant's non-opposition brief (ECF No. 87), class and collective action members faced considerable risk were this case to be litigated further. Certification of off-the-clock claims in uncertain, and such claims are challenging to prove. (ECF No. 83 at 24-25). Furthermore, the *de minimis* doctrine could have drastically reduced FLSA recovery. (*Id.* at 25). Certification of meal and rest break claims is also uncertain. (*Id.* at 25-26). Commission pay violations appear limited and cell phone use could have been found to have been unnecessary. (*Id.* at 26-27). Defendant may also have succeeded in its good-faith defenses, and Plaintiffs may have recovered less in interest and penalties than they will under the Amended Settlement. (*Id.* at 27-28). Trial and appeal would have brought additional risks. (*Id.* at 28-29). Immediately, if the case were not settled, FLSA 29 U.S.C. §216(b) notice would have issued, and – based upon Plaintiffs' Counsel extensive experience in similar matters – most of the Enrollment Agents who will benefit under this settlement outside California would

8

not have benefited, going forward, because they would not have affirmatively, timely submitted opt-in forms. (ECF No. 84 at 4).

### 3.   The Amount Offered in Settlement Weighs Strongly in Favor of Final Approval

Under the Amended Settlement, Defendants have agreed to make a $2,948,867 guaranteed payment (including a $50,000 PAGA payment) into a Settlement Fund. (Amended Settlement ¶ 1.25). Associated expenses, such as attorneys' fees and costs, incentive awards, settlement administration fee, and PAGA payments to the LWDA, are to be paid out of the Settlement Fund, leaving a $2,419,367 Net Settlement Fund to be distributed among Class Members. (Amended Settlement ¶ 1.26). Prior to preliminary approval, Plaintiffs estimated that including unpaid wages, premiums, reimbursements, interest, and penalties, Class Members' claims are worth at most $10 million. (Terp PAM Decl. ¶¶ 19-21). The Settlement Fund represents nearly 30% of that amount, and the Net Settlement Fund represents more than 24% of that amount. (*Id.*) Speculative penalties are not typically included when considering the reasonableness of a settlement amount (*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009), and here, the estimated amount of federal and California state unpaid wages and unreimbursed costs exclusive of interest and penalties is $4,826,659.39, *i.e.,* the Amended Settlement represents more than 61% of that amount. (Terp PAM Decl. at ¶ 21). This calculation of potential damages for Defendants' failure to pay all hours worked including overtime, failure to provide meal and rest breaks, reimbursement, and derivative claims is based upon Plaintiffs' analysis of the time and payroll data provided by Defendants as well as information obtained from Plaintiffs and many Class Members. (*Id.* at ¶¶ 9, 19, 20).

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (Conti, J.).

This Settlement, which provides a net of $2,256.87 per person, on average, compares favorably with other off-the-clock settlements in similar cases. *See, e.g.*, *Richardson*, 2019 WL 803746, *3 (final approval granted for settlement involving average net payments of $2,138.99 to room attendants for certified rest break and off-the-clock claims); *Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, **7-8 (N.D. Cal. June 1, 2018) (James, M.J.) (final approval for settlement providing average gross payment of $1,270 per class member for meal and rest break as well as off-the-clock claims); *Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255, at **1-2 (N.D. Cal. Oct. 11, 2017) (Gilliam, J.) (preliminarily approving $952,000 gross settlement of off-the-clock, and meal and rest break claims, for 1,168 individuals for a gross average recovery of approximately $800 per person). The percentage recovery also compares favorably with other approved settlements. *See, e.g.*, *O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (ECF Nos. 84, 92) (N.D. Cal. 2014) (Spero, M.J.) (attached as Exh. 8 to ECF No. 65, ¶ 23) (approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net average payment) where total exposure before penalties and interest was estimated at $108 million, for a recovery of less than 3% of full relief); *Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, Case No. 13:-cv-00672 (E.D. Cal. June 9, 2015) (ECF 30) (see ECF No. 65-7; ECF No. 65, ¶ 23) (preliminarily approving, for a settlement providing $100,000 gross to be distributed to the 88 class members, for a gross average payment of $1,136.26, constituting 10.5% of the maximum estimated value of the claims); *id.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014); *Ma v. Covidian Holding, Inc.*, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'").

Prospective relief must be considered in evaluating the true value of a settlement. *See, e.g.*, *In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (considering that benefits to the class went beyond the settlement fund); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922-23 (9th Cir. 2014) (taking injunctive relief into account in assessing settlement value), depublished on other grounds; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ("Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in evaluating a class settlement). Factoring in Defendants' meaningful reforms, as well as Defendants' payment of payroll taxes, this Settlement's recovery warrants approval.

#### 4. The Stage of the Proceedings Favors this Settlement

"Courts look to the amount of exchanged information prior to settlement to determine whether the parties have made an informed decision to settle the case." *Willner v. Manpower Inc.*, 2015 WL 3863625, at *4 (N.D. Cal. June 22, 2015) (Tigar, J.); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). The Parties have exchanged written discovery responses, as well as thousands of pages of documents through informal and formal discovery, and have taken corporate designees' and two named-Plaintiffs' depositions. (ECF No. 65, ¶ 2, 8-10, 26; Terp PAM Decl. ¶ 25;Schwartz Declaration In Support of Attorneys' Fees and Costs, ¶ 10). This discovery, and an independent investigation including dozens of class member interviews, informed Plaintiffs' decisions about the strengths and weakness of their claims. (*See* Terp PAM Decl. ¶¶ 20, 25; ECF No. 65 ¶¶ 2, 20, 26).

#### 5. The Able Class Representation and Class Counsel's Support for the Deal Support Settlement Approval.

The Court should weigh heavily undersigned counsel's support for the arms'-length settlement. *See Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citations omitted); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2017 WL 2212780, at *9 (N.D. Cal. 2017) (Breyer, J.); *see also* Declaration of Bryan J. Schwartz in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs ("Schwartz Fees Decl.") ¶ 11; Declaration of Bryan J. Schwartz in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Amended Settlement (Schwartz PAM Decl.") ¶ 5; Terp PAM Decl. ¶ 15. Class Counsel has represented tens of thousands of employees in dozens of wage/hour class actions like this one. (ECF No. 83-1 ¶ b-c). Class Counsel was formerly Chair of the State Bar of California's over 7,500-member Labor and Employment Section (now under the auspices of the California Lawyers Association), has repeatedly led the State Bar's Advanced Wage and Hour Seminar, served on the Executive Board of the California Employment Lawyers Association, helped lead the California Employment Lawyers Association Wage and Hour Conference, and has published frequently and spoken at numerous conferences regarding wage and hour litigation, with a special focus on class action settlements. (*Id.* at d-h). Class Counsel submits that, based upon his significant experience

11

litigating wage and hour cases, the Settlement is a strong recovery for the Class. (Schwartz Fees Decl. ¶ 11). Counsel ably represented the Class here, as evidenced by the solid monetary recovery and injunctive relief – a result which Counsel was able to negotiate to improve after the Court's initial rejection of preliminary approval. The Court should not hesitate to see this factor as weighing in favor of final approval.

### 6. The Government's Non-Participation Supports Approval, in Light of the Reasonable PAGA Settlement.

While no government entity has filed an appearance in this matter, Plaintiffs complied with the PAGA's notice requirement to the California Labor Workforce Development Agency ("LWDA"). (Schwartz Decl. ¶ 5). Plaintiffs exhausted their PAGA claim with the LWDA, and the LWDA chose not to intervene or otherwise take any action in this case. (ECF No. 61-4, pdf p. 2 of 4; ECF No. 84, ¶ 40).

The $50,000 PAGA allocation is approximately 1.7% of the Settlement Fund, and 3.75% of the estimated value of the PAGA claims. (Terp PAM Decl. ¶ 43). This amount is reasonable compared to allocation ratios approved in other class / PAGA hybrid settlements. *See, e.g.*, *Viceral v. Mistras Grp. Inc.*, 2017 WL 661352, at ** 1, 3 (N.D. Cal. Feb. 17, 2017) (Chen, J.) (approving PAGA penalties worth 0.33% of gross settlement and 0.15% of total estimated value of PAGA claims); *Alexander v. FedEx Ground Pkg. Sys., Inc.*, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (Chen, J.) (0.7% PAGA allocation); *Vazquez v. USM Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (Donato, J.) (0.67%); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) ) (Ryu, J.) (0.57%).

At the hearing on Plaintiffs' motion for approval of the initial settlement, the Court stated "I think it's fine for [parties] to allocate a small portion of the settlement to PAGA as long as the overall settlement is appropriate." (ECF No. 84-2, p. 18:12-14). The Court's reasoning is supported by both California and federal law regarding PAGA allocations. *See, e.g., Nordstrom Com'n Cases*, 186 Cal.App.4th 576, 589 (2010) (PAGA settlements must be considered in the context of "the overall settlement of the case" and need not allocate any portion of the recovery to PAGA penalties to warrant court approval); *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (Chen, J.) (applying a "sliding scale" approach in considering settlements that contain both class and representative PAGA claims, which permits a small award of PAGA penalties for "robust" settlements that "not only vindicate [] rights

of [] class members as employees, but may have a deterrent effect upon the defendant [] and other employers"); *O'Connor v. Uber, Inc.*, 201 F.Supp.3d 1110, 1134-35 (N.D. Cal. Aug. 18, 2016) (Chen. J.) (same).

As discussed above, the Amended Settlement has a strong deterrent effect in the form of millions of dollars in compensation and meaningful injunctive relief. (Amended Settlement, 3.16). In 2019, Defendant Idemia implemented a more accurate timekeeping system in California, and Defendant Idemia has agreed to adopt changes nationwide by the year's end. (*Id.*). Accordingly, and in light of the LWDA's abstention, the PAGA allocation should be approved.

### 7. The Amended Settlement is Also Reasonable Under the FLSA's Review Standard

When an employee brings an action for wages under 29 U.S.C. § 216(b), the parties must present any proposed settlement for approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). If the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," a stipulated judgment is appropriate. *Id.* at 1355. Settlements of FLSA claims are permissible because initiation of the action "provides some assurance of an adversarial context." *Id.* at 1354. Employees are likely to be represented by an attorney who can protect their rights, so "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights." *Id.* If the settlement reflects a reasonable compromise of disputed issues, approval is permissible. *Id.* Here, the FLSA claims are based on reasonable estimates of daily off-the-clock work and regular rate of pay violations. (Terp PAM Decl. ¶ 20). For the reasons discussed above, this Settlement of FLSA claims is fair.

### 8. The Positive Reaction of the Class to the Proposed Settlement Strongly Favors Settlement Approval.

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a very significant factor in determining whether to grant final approval. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks and citation omitted)); *Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) (approving the relevant settlement in large part because only 3%

13

of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact that none of the class members had objected and a small percentage opted out of the settlement was "entitled to nearly dispositive weight").

No class action member objected to the settlement or opted out, and no collective action member withdrew his or her consent form. Rust Decl. ¶ 14-15. Thus, the Court should approve.

In sum, all of the relevant factors demonstrate that this is a fair, adequate and reasonable settlement, and final approval is therefore appropriate.

### 9.  All Additional Settlement Terms are Fair

The requested attorneys' fees and costs (described in a separate motion, ECF No. 93), enhancement payments, and *cy pres* designee are also appropriate, as discussed below.

#### a.    Representative and Declarant Plaintiffs' Modest Enhancements are Appropriate

Plaintiffs request the Court's approval of incentive payments. Enhancement awards should be evaluated using "'relevant factors, includ[ing] the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the Plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s] of workplace retaliation.'" *Staton*, 327 F.3d at 963.

By initiating this lawsuit, the three named Plaintiffs were personally exposed to potential adverse consequences related to current and future employers. *See Rutti v. Lojack Corp.*, 2012 WL 3151077, at **5-6 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives" for employees to participate in class and collective actions"); *Ross v. U.S. Bank Nat'l Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (Illston, J.) (service awards based on "willingness to serve as representatives despite the potential stigma that might attach to them"). Named-Plaintiffs Jessica Cotton and Connie Rueda were current employees when they filed the lawsuit and risked retaliation. (*See* ECF No. 1, Notice

of Removal, pdf. p.1 (orig. compl. filed May 22, 2018); ECF No. 55 ¶¶ 8-9; ECF No. 32-1, ¶ 2; ECF No. 32-2, ¶ 2; Declaration of Jessica Cotton (Cotton Decl.) ¶ 3; Declaration of Connie Rueda (Rueda Decl.) ¶ 3).

The three named Plaintiffs were substantially involved in the litigation, were instrumental in bringing about a settlement that benefits Class Members, and have each agreed to a general release of claims. (*See* Terp PAM Decl. ¶¶28-35; ECF No. 65 ¶¶ 30-37; Amended Settlement ¶ 3.3). In addition to attending the full-day mediation, Jessica Cotton and Connie Reuda prepared with undersigned counsel for their full-day depositions, including through in-person preparation sessions, and by performing thorough searches in order to provide documents in response to Idemia's requests associated with their depositions notices, document requests, and interrogatory requests. (Terp PAM Decl. ¶ 32; Cotton Decl. ¶ 4; Rueda Decl. ¶ 4). Shelia Spencer made herself available by phone for the November 20, 2018 mediation. (Declaration of Shelia Spencer (Spencer Decl.) ¶ 4). Like Plaintiffs Cotton and Rueda, she reviewed the Complaint, settlement, and other relevant documents, provided a declaration in support of conditional certification, and responded to document and interrogatory requests. (Terp PAM Decl. ¶ 33; Spencer Decl. ¶ 4). All three educated Class Counsel regarding Class Members' job duties and Defendants' policies and procedures. (Terp PAM Decl. ¶ 34; Cotton Decl. ¶ 4; Rueda Decl. ¶ 4; Spencer Decl. ¶ 4).

Under similar facts, this Court has awarded substantial enhancement payments to Class Representatives. *See Buckingham v. Bank of Am., N.A.*, No. 3:15-cv-6344-RGS (N.D. Cal.) (ECF No. 103, at pdf pp. 9:25-26 of 11, filed Jul. 11, 2017) (Seeborg, J.) (approving $15,000 award) (attached as ECF 65-9; *id.* ¶ 39); *Guilbaud v. Sprint Nextel Corp.*, 2016 WL 7826649, at *4 (N.D. Cal., Apr. 15, 2016) (Chhabria, J.) (approving $10,000 awards); *Galeener v. Source Refrig. & HVAC, Inc.*, 2015 WL 12977077, at *2 (N.D. Cal., Aug. 21, 2015) (Chhabria, J.) (approving $25,000 award); *Galeener v. Source Refrig. & HVAC*, 2015 WL 12976106, at *3 (N.D. Cal. Aug. 20, 2015) (same).

The eight opt-in Plaintiffs who provided declarations supporting the successful conditional FLSA certification motion strengthened the class and collective claims by corroborating the allegations in multiple locations around California and elsewhere, thereby increasing Defendants' potential exposure. (Terp PAM Decl. ¶ 37). Their efforts to step forward on behalf of the Class should also be rewarded. *See,*

15

*e.g.*, *Johnson v. Quantum Learning Network, Inc.*, 2017 WL 747462, at *7 (N.D. Cal. Feb. 27, 2017) (Koh, J.) (approving $1,000 incentive award as reasonable "[when] others did not step forward").

Moreover, the total combined service awards total merely 0.92% of the common fund. *See Hopson v. Hanesbrands, Inc.*, 2009 WL 928133, at *28 (N.D. Cal. Apr. 3, 2009) (Laporte, M.J.) (approving service award to named plaintiff constituting 1.25% of the total settlement amout in wage and hour class actions); *Scandoval v. Tharaldson Employee Management, Inc.*, 2010 WL 2486346, at *26-27. (C.D Cal. June 15, 2010) (approving incentive payment constituting 1% of the total settlement value in wage and hourclass action).

For the foregoing reasons, undersigned counsel believes that the $7,500 amount requested for named Plaintiffs Jessica Cotton and Connie Rueda and the $4,000 amount requested for named Plaintiff Sheila Spencer are the minimum service awards in a case of this nature which would viably promote the public policy interest in encouraging those with wage-and-hour claims to assert them despite their fears, personal burdens, and time associated with doing so. (Terp PAM Decl. ¶ 35). Additionally, the $1,000 for each opt-in Plaintiff who provided a declaration in support of conditional certification is also reasonable. (*Id.* at ¶ 37). The Court should grant final approval of these service awards.

### b.      The Requested Cy Pres Beneficiary is Appropriate

For the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval, the *cy pres* beneficiary, Legal Aid at Work ("LAAW"), meets the test under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013) "that there be a [] nexus between the [] class and the *cy pres* beneficiaries." The present case seeks to enforce wage protections, and over 100 Class Members worked in California. (Amended Settlement, ¶ 21; ECF No. 32-1; ECF No. 32-2; ECF No. 32-3). LAAW is the leading provider of direct legal services in employment law for low-wage workers in California. (Amended Settlement, ¶38). Plaintiffs' Counsel has no financial stake in this designation. (Schwartz PAM Decl., ¶ 6; Amended Settlement ¶ 39; ECF No. 64-2, ¶ 3). The Court should grant final approval of this beneficiary.

## V.      CONCLUSION

For the reasons stated above, Plaintiffs request the Court (1) grant final approval of the Parties' amended settlement in the gross amount of $2,948,867, not including the employer's share of payroll

taxes, plus injunctive relief; (2) award the requested service payments to the Class Representative and Declarants; (3) approve the attorneys' fees and costs awards (for the reasons described in a separate fee/cost motion, ECF No. 93); and (4) enter the proposed order and judgment accordingly.

Dated: November 22, 2019                                        BRYAN SCHWARTZ LAW

                                                               By: */s/ Bryan J. Schwartz*_____
                                                               Bryan J. Schwartz
                                                               Natasha T. Baker
                                                               *Attorneys for Plaintiffs*

NOT. OF MOT. & UNOPPOSED MOT. FOR FINAL APPROVAL OF AMENDED CLASS
ACTION SETTLEMENT, CASE NO.: 3:18-cv-03794-VC